**STATE of Missouri, Plaintiff–Respondent,**

v.

**David ARLES, Defendant–Appellant.**

**No. 22413.**

Missouri Court of Appeals, Southern District, Division One.

July 7, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1999.

Application for Transfer Denied Sept. 21, 1999.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Hawley, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

David Arles (defendant) was convicted, following a jury trial, of the class D felony of possession of pseudoephedrine with the intent to manufacture methamphetamine, a controlled substance. § 195.420.[1] He appeals contending, among other things, that there was not sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that he was guilty of the offense with which he was charged. This court agrees. The judgment of conviction is reversed. Defendant is ordered discharged.

On December 9, 1997, defendant and Debra Cox were shopping at a Wal–Mart Store in Carthage, Missouri. They were observed by Chet Daniels, a loss prevention worker at the Carthage Store.[2] Daniels first observed them in the pharmacy department through the store's video surveillance. Defendant was selecting several boxes of antihistamine tablets. Daniels testified that what drew his attention were other items in defendant's shopping cart.

Daniels had seen local news reports and information from the Internet concerning items that may be used to make methamphetamine. He testified, "There was another memo that I had I cannot remember where I got it from, but it also gave a listing of some items that you may use to make amphetamine, and I noticed off of that and compared with what they had in their cart."

Daniels was asked what was in defendant's cart. He answered, "[Defendant] had a gallon of Coleman fuel, a couple of cans of acetone, he has several boxes of antihistamine tabs and a female subject that he was with also had several boxes of antihistamine tabs. I believe there was

---

1. References to statutes are to RSMo 1994 unless stated otherwise.

2. Daniels was the only loss prevention employee at the Wal–Mart store in December 1997. He had been employed in that capacity for approximately four months.

also coffee filters in the cart." Daniels believed the items in defendant's cart included "common things that you would use to produce methamphetamine."

Defendant pushed the shopping cart away from the pharmacy section of the store. The woman he was with, later identified as Debra Cox, took some items from the cart, including six boxes of antihistamine. They went to different registers to pay for their purchases. Daniels called the police department. Defendant proceeded through the line to the cash register.[3]

Daniels saw defendant and Debra Cox go to their vehicle in the Wal–Mart parking lot. Steven Crews, a Carthage, Missouri, police officer arrived. Daniels pointed out the vehicle in which defendant was travelling.

Officer Crews went to the Wal–Mart store because of "a call from the loss prevention officer at the store that there were two subjects preparing to exit the store making purchases of Coleman fuel and acetone." He saw defendant and Debra Cox walk to a pickup truck and place two shopping bags in a toolbox behind the passenger cab. Officer Crews followed the pickup as it left the parking lot. He ran a check on the license plate on defendant's vehicle. It was registered to a different vehicle. Officer Crews stopped defendant.

After inquiring about the vehicle registration, Officer Crews asked defendant about his purchases at Wal–Mart. Officer Crews testified:

I asked him if he had purchased Coleman fuel and acetone. He said that he had. He said that he purchased the acetone because he was a professional painter and he used it to strip wood. He said that he purchased the Coleman fuel because their electricity was turned

off at that residence and he was using that to light the house.

At trial the state stipulated that electric service to defendant's residence had been discontinued in October 1997.

Defendant was issued a traffic ticket for failure to register a vehicle. While Officer Crews was writing the ticket, two other officers, Detective Harmon and Officer Korn, arrived. Defendant consented to a search of his vehicle. Detective Harmon searched the passenger compartment and the toolbox in the back of the truck. Officer Crews explained, "He checked the interior of the vehicle first, didn't locate any contraband and then opened the toolbox from the back of the truck and removed the four bags from inside. That contained numerous articles including the Coleman fuel and the acetone." Defendant was arrested "for possession of the substances." The criminal offense with which defendant was ultimately charged is the offense established by § 195.420. The statute (as it existed December 9, 1997[4]) states:

1. It is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400 with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter that chemical to create a controlled substance or a controlled substance analogue in violation of sections 195.005 to 195.425.

2. A person who violates this section is guilty of a class D felony.

Defendant was charged with having "possessed pseudoephedrine a chemical listed in Section 195.400(2), RSMo, with the intent to manufacture methamphetamine."

Defendant presents three points on appeal. Only Point I is addressed. It disposes of the appeal. Point I asserts the trial court erred in denying defendant's

---

3. Defendant's purchases included gravel cleaner, "lamp oil for oil lamps that you burn with a wick," two cans of solvent, coffee filters, "WM bath–24," air line tubing, propane, Coleman fuel, alcohol and six boxes of Suphedrine. Ms. Cox purchased dog "chew

bones," "tea lights" and six boxes of Suphedrine.

4. § 195.420 was amended in 1998. See H.B. 1147, 1998 Mo.Laws.

motions for judgment of acquittal and in sentencing him for the offense "of creation of a controlled substance"[5] because the jury's finding of guilty was unsupported by sufficient evidence; that all items defendant possessed were legal items; they were not sufficient materials from which methamphetamine could be produced; and defendant had taken no steps to manufacture any controlled substance.

Appellate review of a claim of insufficiency of evidence to support a conviction is limited to ascertaining if there was sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Smith*, 944 S.W.2d 901, 916 (Mo. banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997). "The evidence and all reasonable inferences therefrom are reviewed in the light most favorable to the jury's verdict and any contrary evidence and inferences are discounted." *Id.*

All the items that defendant purchased and had in his possession at the time of arrest were items legally acquired. Even if some or all of them could be used to manufacture methamphetamine, unless the evidence was sufficient to permit a reasonable juror to find defendant intended to manufacture methamphetamine, he could not be found guilty of the offense with which he was charged.

The state's expert witness, Dr. Phillip Whittle, director of Missouri Southern State College Regional Crime Laboratory, testified that the active ingredient in Suphedrine, the antihistamine tablets defendant and Debra Cox bought and defendant possessed when he was arrested, was pseudoephedrine. He testified further, however, that the items that were in defendant's possession alone would not be sufficient to create methamphetamine; that "you'd have to have some other ingredients to go with this."

The facts of this case are like those in *State v. Morrow*, 996 S.W.2d 679 (Mo.App. 1999). The state presented no evidence that defendant planned to use the supplies he possessed to manufacture methamphetamine or that he knew how to manufacture methamphetamine. The items that were in defendant's possession are available commercially to the public, have valid uses, and are legal to possess. *Morrow* explains that under such circumstances a jury might be entitled to be suspicious of the person possessing the items, but could not conclude, absent speculation, that the possessor intended to manufacture methamphetamine. *Morrow* concludes, under those circumstances, evidence is insufficient to support a conviction.

The state argues that other factors in this case give rise to inferences from which a reasonable juror could conclude, beyond a reasonable doubt, that defendant was guilty. The factors it asserts arise from testimony that while in the store, defendant and his companion appeared nervous and alert and made separate purchases at separate registers of the antihistamine, Suphedrine; that when defendant was arrested he told Debra Cox, "Don't say anything else they are just trying to make something out of nothing."

Chet Daniels testified that defendant and Ms. Cox appeared nervous when he first observed them; that they were alert and watchful of what was going on around them. He was asked, however, if their conduct was unusual; whether they were "more nervous or more skittish than an average shopper?" He replied, "Not so much – I wouldn't say to the point where it's like a compulsive nervous disorder or anything." He was asked if the behavior and demeanor he observed had the appearance of someone trying to cover up an illegal activity. He answered that it did not.

---

**5.** The heading for § 195.420 identifies the statute as "Creation of controlled substance, penalty." Likewise, the amended information by which defendant was charged identified the offense established by that statute as "creation of a controlled substance," notwithstanding that the specification set forth the criminal charge with specificity, viz., that "the defendant possessed pseudoephedrine ... with the intent to manufacture methamphetamine."

As to the separate purchases of Suphedrine by defendant and Ms. Cox, the evidence was that Wal–Mart policy was to limit the purchase of antihistamines to six boxes per customer. Defendant and Ms. Cox each purchased six boxes of Suphedrine and went through separate checkout lanes to pay for their purchases. The explanation for the purchases included testimony by Ms. Cox of a chronic ailment for which she regularly used antihistamine tablets; that she had a shattered sinus cavity that caused her to have ongoing sinus and allergy problems. She testified the product that was purchased was the cheapest of those products that were available; that she could get six boxes for the same price as three boxes of other brands. She testified that the price of the item was cheaper at the Carthage store than at the Golden City store that was closer to her residence.

The other evidence on which the state relies is defendant's statement at the time of his arrest. He told Debra Cox not to say anything; that the officers were trying to make something from nothing. This occurred while defendant was being advised of his right not to make a statement.

 Commands by an accused to another to give no information can manifest a consciousness of guilt and be admissible in a criminal trial. *See State v. Marvel,* 756 S.W.2d 207, 211–12 (Mo.App.1988). In this case defendant explicitly told Ms. Cox the police were making "something out of nothing." This court does not find that defendant's statement evidenced consciousness of guilt. The evidence in this case was not sufficient for a reasonable juror to find, beyond a reasonable doubt, that defendant was guilty. The judgment of conviction is reversed. Defendant is ordered discharged.

PREWITT, P.J., and CROW, J., concur.