**STATE of Missouri, Respondent,**

v.

**Clarissa J. AGEE, Appellant.**

**No. 23341.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 25, 2001.

Motion for Rehearing or Transfer
Denied Feb. 13, 2001.

Application for Transfer Denied
March 20, 2001.

---

**5.** In his brief, Mr. Whiteman asks this court to award him damages for a frivolous appeal. His request is denied.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., & Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for Respondent.

BARNEY, Chief Judge.

Appellant Clarissa J. Agee was found guilty, following a trial by the court, of possessing pseudoephedrine with intent to manufacture a controlled substance. § 195.420, RSMo 1994. At trial no oral evidence was presented to the court. The case was submitted to the court on the basis of "joint exhibit number one," consisting of information contained in police reports and a forensic laboratory report.[1] Appellant was sentenced to a two-year term of imprisonment with the court suspending the execution of the sentence and placing her on probation for five years. Appellant now appeals raising one point of trial court error. She contends that the trial court erred in overruling her motions for judgment of acquittal. She maintains that there was insufficient evidence to prove her guilt beyond a reasonable doubt of possession of pseudoephedrine with the

---

1. Some of Appellant's statements to officers contained in the police reports were redacted prior to the reports being submitted to the trial court. This was evidently done from concern over whether or not Appellant had been arrested but not given her "Miranda" warnings at the time the statements were made. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Prior to trial, defense counsel filed a motion to suppress the redacted statements. It is unclear whether these statements were redacted pursuant to the court granting the motion to suppress or pursuant to an agreement between the parties. Neither side complains that the information was improperly redacted.

intent to manufacture a controlled substance.

■■■ "This court reviews the sufficiency of the evidence in a court-tried criminal case by applying the same standard used in a jury-tried case." *State v. Dawson*, 985 S.W.2d 941, 946 (Mo.App.1999). " 'We review the denial of a motion for acquittal to determine if the state adduced sufficient evidence to make a submissible case.' " *State v. Howard*, 973 S.W.2d 902, 906 (Mo. App.1998) (quoting *State v. Foster*, 930 S.W.2d 62, 63 (Mo.App.1996)). "In determining whether the evidence is sufficient to support a conviction, we accept as true all reasonable inferences drawn from the evidence and disregard all evidence and inferences to the contrary." *Id.* "The function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence." *Dawson*, 985 S.W.2d at 946. "This same standard applies to the court's review of both direct and circumstantial evidence." *Id.*

On July 16, 1998, two Springfield police officers observed a car travelling east on a Springfield street without a light illuminating the license plate. The officers turned on their warning lights in an attempt to stop the vehicle. The vehicle sped up and turned north around a corner. As the car was turning, the officers observed an object being thrown from the passenger side window of the car. The car then stopped "just north of where the item landed...." The officers approached the car and found that Appellant was the driver and her twelve-year-old daughter was in the passenger seat. Both Appellant and her daughter were handcuffed and the officers retrieved the object-a light brown nylon purse-that had been thrown from the car. Inside of the purse the officers found seven blister packs of pseudoephedrine tablets, containing in total 168 tablets. The blister packs were not in cardboard packaging. When questioned about the tablets, Appellant stated that there was nothing illegal about having them and that Wal

Mart sold them. The officers searched Appellant's vehicle and found a leather and lead sap or "blackjack" under the car radio near the gear shift and a propane tank from a barbecue grill in the trunk. Appellant stated that the propane tank was her father's.

Under section 195.420, RSMo 1994, "[i]t is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400 with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter that chemical to create a controlled substance...." Pseudoephedrine is a chemical listed under section 195.400.2(20). Therefore, we must determine whether the State presented enough evidence that a reasonable fact finder could find beyond a reasonable doubt: 1) that Appellant possessed pseudoephedrine; and 2) that she did so with the intent to manufacture a controlled substance, in this case methamphetamine. *See State v. Morrow*, 996 S.W.2d 679, 682 (Mo.App.1999). We determine that while there was sufficient evidence for a reasonable fact finder to find beyond a reasonable doubt that Appellant possessed the pseudoephedrine, there was insufficient evidence for the fact finder to find that she intended to manufacture methamphetamine.

### Possession.

■■■ As to possession, the State had the burden to prove that Appellant had actual or constructive possession of the pseudoephedrine. Actual possession of a substance is where the person has the substance on his or her person or within his or her easy reach and convenient control. *State v. Booth*, 11 S.W.3d 887, 891 (Mo.App.2000). Constructive possession is where a person has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons. *Id.; see also State v. Powell*, 973 S.W.2d 556, 558–59 (Mo.App.1998).

■ Here, the evidence showed that Appellant was operating the vehicle and that an object had been thrown from the vehicle's passenger side. While there was no evidence showing that the officers specifically saw Appellant throw the purse from the window, they clearly saw that the purse was thrown from the vehicle that Appellant was operating. Further, Appellant's daughter was only twelve-years-old. While in this day and age the daughter's young age does not rule out the possibility that she was the one in possession of the pseudoephedrine or that Appellant was oblivious to its presence; we think, nevertheless, that this fact combined with the fact that the vehicle was under the exclusive control of Appellant and stopped almost immediately after the purse had been thrown from the window, denotes a connection between the purse, the vehicle and the operator of the vehicle, thereby supporting the inference that Appellant had constructive control over the purse. *See State v. Webster,* 754 S.W.2d 12, 12–13 (Mo.App.1988). As for the pseudoephedrine tablets found in the purse, Officer Edwards wrote in his report that Appellant "started to argue that Wal Mart sold the items and that there was nothing illegal about owning them." This remark is supportive of the inference that Appellant was aware that the purse contained the pseudoephedrine tablets. Considering the totality of the circumstances, we determine that a rational fact finder could have found beyond a reasonable doubt that Appellant had at least joint possession of the pseudoephedrine. *See Booth,* 11 S.W.3d at 891; *State v. Camerer,* 29 S.W.3d 422, 425–26 (Mo.App.2000); *see also State v. Schleicher,* 458 S.W.2d 351, 353 (Mo. banc 1970).

### Intent to Manufacture.

■ We now turn to the more difficult question of whether there was enough evidence for a rational fact finder to find that, under the evidence presented, Appellant intended to use the pseudoephedrine to manufacture methamphetamine. The State points out correctly that direct evidence of intent is rarely susceptible to direct proof and, therefore, must generally be established by circumstantial evidence and that the evidence need not be conclusive of guilt, nor must the evidence exclude every hypothesis of innocence. *State v. Martin,* 882 S.W.2d 768, 770 (Mo.App. 1994).

■ We observe that " '[a]n 'inference' is a conclusion drawn by reason from facts established by proof.' " *Howard,* 973 S.W.2d at 906 (quoting *Foster,* 930 S.W.2d at 64). While reasonable inferences may be drawn from both direct and circumstantial evidence, these inferences must be logical, reasonable, and drawn from established fact. *Dawson,* 985 S.W.2d at 947; *see State v. Friend,* 936 S.W.2d 824, 828 (Mo.App.1996) ("In the absence of proven facts from which it logically follows, an inference lacks the stature of substantial evidence.").

■ In the instant matter, the record reveals that a large number of pseudoephedrine tablets in blister packs were found in the discarded purse. Case law suggests, however, that this factor alone is insufficient to prove intent to manufacture methamphetamine. In *State v. Tackett,* 12 S.W.3d 332, 334 (Mo.App.2000), a police detective was tipped off to the fact that some men had purchased twelve boxes of allergy medicine from a Wal Mart. The men were pulled over and subsequently arrested for violating section 195.420, RSMo 1994. *Id.* at 335–36. The men stated that they had allergies but the police officers testified that they showed no symptoms of having allergies. *Id.* at 336. In finding that the officers did not have probable cause to arrest the defendant, the court stated:

the State is essentially contending that people who possess antihistamines in the quantities purchased here, without visible signs of allergies, must be intending to manufacture methamphetamines. We reject this contention and, on the totality of the circumstances, find that

the State failed to carry its burden to show that there was probable cause to believe that the respondent had the requisite intent to create methamphetamines so as to establish the necessary probable cause for his arrest for a violation of 195.420 . . . .

*Id.* at 340. While we acknowledge that we are reviewing on the basis of sufficiency of the evidence, the same logic as in *Tackett* applies, *a fortiori,* to the case before us. Therefore, it is clear that possession of a large amount of pseudoephedrine *alone* is not enough to support Agee's conviction.

We therefore must examine the other evidence supporting the State's contention of Appellant's guilt. The State urges us to consider the propane tank that was found in the trunk of Appellant's car and her statements concerning how it came to be there as proof of her intention to manufacture the controlled substance methamphetamine. One of the police officers stated in his report that he believed "[Appellant] had taken the tank without her father's consent in order to procure anhydrous ammonia which is a common precursor of methamphetamine . . . ." As noted above, Appellant claimed that the propane tank was her father's. The father also owned the vehicle. According to the police report, when Appellant's father arrived on the scene, Appellant is reported to have told one of the police officers that she did not want the father there because her father did not know that she had taken his propane tank. However, no evidence was presented to the trial court that anhydrous ammonia was found in the tank in question. Nor was there any evidence showing that the propane tank had been used to manufacture methamphetamine.

In *State v. Arles,* 998 S.W.2d 136, 138 (Mo.App.1999), the defendant and his girlfriend purchased twelve boxes of suphedrine, lamp oil, solvent, coffee filters, air line tubing, propane, coleman fuel and alcohol, among other items. While evidence was presented that these items were often used in the manufacture of methamphetamine, this Court found that:

All the items that defendant purchased and had in his possession at the time of arrest were items legally acquired. Even if some or all of them could be used to manufacture methamphetamine, unless the evidence was sufficient to permit a reasonable juror to find defendant intended to manufacture methamphetamine, he could not be found guilty of [possession of pseudoephedrine with the intent to manufacture methamphetamine under Section 195.420].

*Id.* at 139. This Court then reversed the defendant's conviction and ordered him discharged. *Id.* at 140.

In *State v. Morrow, supra,* Morrow admitted purchasing five bottles of pseudoephedrine and ephedrine two weeks before his arrest; he also related that he and another individual had bought tolulene and "Liquid Fire," for another individual—known by police as being a drug dealer. *Morrow,* 996 S.W.2d at 681. Nevertheless, Morrow denied that he intended to manufacture methamphetamine or that he knew anyone who intended to make the controlled substance. *Id.* In reversing Morrow's conviction, the Western District of this Court observed that "[w]hile the items found in [the defendant's] possession are all used to manufacture methamphetamine, they are all sold commercially, have valid use and are legal to possess." *Id.* at 683. The court then opined that although the jury may have been entitled to be suspicious of Morrow's possession of such chemicals and air tank, they could not have concluded without speculation on this evidence alone that Morrow intended to manufacture methamphetamine. *Id.* at 683.

We also observe that it is not against the law to possess the amount of pseudoephedrine that Appellant possessed at the time of her arrest. Neither was it against the law to operate a vehicle with a propane tank in its trunk. While the tablets of pseudoephedrine and a propane tank may be used in the process of manufacturing

methamphetamine, this evidence alone was insufficient to prove that Appellant intended to manufacture methamphetamine. *Id.* at 683; *Arles,* 998 S.W.2d at 139. The State presented no evidence that Appellant planned to use the materials she possessed to manufacture methamphetamine or that she otherwise knew how to manufacture the substance. According to the police report, Appellant expressly "denied any knowledge of the manufacture of methamphetamine." Furthermore, no laboratory or manufacturing equipment nor other ingredients necessary for the manufacture of methamphetamine were found in Appellant's possession. *See Morrow,* 996 S.W.2d at 683. Additionally, we do not believe that the brief flight and the act of throwing the tablets out the window is enough to prove a violation of section 195.420, RSMo 1994. While the trial judge may have been suspicious of Appellant's action in discarding the tablets and possessing *some* of the materials necessary for the manufacture of methamphetamine, he "could not have concluded, without speculation, on this evidence alone, that [Appellant] intended to manufacture methamphetamine or that [Appellant] took a substantial step toward the manufacture of methamphetamine...." *Id.* at 683. The evidence, therefore, was insufficient to support a conviction for possession of pseudoephedrine with the intent to manufacture methamphetamine. *Id.*

The judgment of conviction is reversed. Appellant is ordered discharged. *Arles,* 998 S.W.2d at 140.

PREWITT and GARRISON, JJ., concur.