STATE of Missouri, Plaintiff–Respondent,

v.

Robert D. DAVIS, Defendant–Appellant.

No. 23857.

Missouri Court of Appeals, Southern District, Division Two.

July 20, 2001.

1. Father was a party to the proceedings in the circuit court but is not a party to this appeal.

Keith D. Sorrell, Spain, Merrell and Miller, L.L.P., Poplar Bluff, Attorney for Appellant.

Robert Z. Oberzalek, Prosecuting Attorney of Shannon County, Eminence, Attorney for Respondent.

GARRISON, J.

Robert D. Davis ("Defendant") was charged with the attempt to take deer with the aid of dogs in violation of Section 252.040, RSMo 2000, and 3 CSR 10-7.410(1)(D) (2000). After a bench trial, he was convicted and fined $75.00 plus court costs. He appeals his conviction, asserting that there was insufficient evidence to support his conviction, and that 3 CSR 10-7.410(1)(D) (2000) does not prohibit the attempt to take deer with the aid of dogs.

■ In a court-tried case the sufficiency of the evidence is determined by the same standard as in a jury-tried case, and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt. *State v. Downen*, 3 S.W.3d 434, 435 (Mo.App. S.D. 1999). In determining whether or not there is evidence sufficient to support a finding of guilt, an appellate court may not weigh the evidence, but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored. *Id.* Viewed in this light, the evidence most favorable to the judgment shows:

On November 14, 1999, Conservation Agents Kevin Patterson ("Agent Patterson") and Paul Veach ("Agent Veach") were watching a deer camp located on Defendant's property. Several hunters came into the camp on all-terrain vehicles ("ATVs"), sat around the camp, and then all but two of the hunters got on their ATVs and drove out across a flat open field. The hunters spread out and went into the woods surrounding the field.

Defendant, who was one of the two men left at the camp, went over to a dog pen and ran three dogs out of the pen. Defendant, clad in hunter orange, then got on his ATV and called for the dogs to follow him. He drove across the field toward the

woods in a direction to the left of where the other hunters had gone. As he went across the field, he called to the dogs, "[c]ome on, dogs," "[c]ome on." The dogs followed him across the field running beside his ATV and obeying his commands.

Defendant and the dogs disappeared into the woods. The dogs then began baying, and Agent Patterson and Agent Veach could hear them running. Agent Veach testified:

> And then in a little bit we seen [sic] the deer come up from that direction, from the very direction, you know, [Defendant and the dogs] had just disappeared into a few minutes earlier, headed east. And the deer was running hard as it could go, and the dog was shortly behind it, running it.
>
> And then—then a little bit later, you know, just a matter of a second or two, here come [sic] [Defendant] upon his ATV. The—The deer and the dog had left my sight by that time. You know, it—it went into the far side of the field, into the timber. And [Defendant] come [sic] out in plain view on his ATV. He never got off of it, he just stood up on the ATV, lifted up his rifle, and pointed it in the direction that the deer and the dog were at. He never did shoot. I don't know if he just didn't have a clear shot at that time, or what—what.

Later that morning, back at the deer camp, Agent Veach spoke with Defendant. Defendant told him that he and his companions had been hunting that day, but that they had not had any luck.

At the July 18, 2000, trial, Agent Veach testified that "the dog that was chasing the deer was definitely one that had been in the pen." He described it as a "common old running dog." However, he stated that if five dogs were brought in the courtroom that day, eight months after the incident, he would not "be able to tell" which one of the dogs was the one he saw chasing the deer.

In his first point relied on, Defendant contends that the trial court erred in convicting him of attempting to take deer with the aid of dogs in that there was no evidence that Defendant made any attempt to take a deer or that he did so with the aid of dogs.

Defendant was charged with violating 3 CSR 10–7.410(1)(D) (2000), which provides:

> Dogs. Dogs may be used during the prescribed open seasons to chase, pursue or take wildlife except deer, turkey, mink, muskrat, beaver and river otter. All dogs used to hunt, chase or pursue wildlife shall wear a collar while hunting that contains the full name and address or complete telephone number of the owner, except this provision does not apply to dogs used by waterfowl and game bird hunters. Furbearers, squirrels and rabbits may not be chased, pursued or taken with dogs during daylight hours of the November portion of the firearms deer season in Bollinger, Butler, Carter, Dent, Iron, Madison, Oregon, Reynolds, Ripley, Shannon and Wayne counties.

3 CSR 10–11.805(43) (2000) defines "pursue" as including "the act of trying to find, to seek or to diligently search for wildlife for the purpose of taking this wildlife." 3 CSR 10–11.805(47) (2000) defines "take" as "killing, trapping, snaring, netting or capturing in any manner, any wildlife, and also refers to pursuing, molesting, hunting, wounding; or the placing, setting or use of any net, trap, device, contrivance or substance in an attempt to take; and every act of assistance to every other person in taking or attempting to take any wildlife."

Defendant argues that his acts were "rightful under the law" in that he was on his own farm and thus not trespassing,

was hunting during the hunting season, and was in the company of some dogs. He contends that the State has "inferred a purpose to [him] without any evidence of either the purpose or his method of hunting."

■ Direct evidence of intent in a criminal case is rarely susceptible to direct proof and, therefore, must generally be established by circumstantial evidence and that evidence need not be conclusive of guilt, nor must the evidence exclude every hypothesis of innocence. *State v. Agee*, 37 S.W.3d 834, 837 (Mo.App. S.D.2001). *See also State v. Young*, 42 S.W.3d 729, 734 (Mo.App. W.D.2001).

■ We observe that an "inference" is a conclusion drawn by reason from facts established by proof. *Agee*, 37 S.W.3d at 837. While reasonable inferences may be drawn from both direct and circumstantial evidence, these inferences must be logical, reasonable, and drawn from established fact. *Id.*

For instance, in *State v. Hall*, 751 S.W.2d 403, 406 (Mo.App. E.D.1988), the defendants were arrested during deer season when they were observed in a truck where a spotlight was slowly, deliberately, and methodically being panned over an adjacent field. The defendants had two loaded weapons, and one of them possessed a deer permit. The court inferred from these facts that the defendants were pursuing deer with the aid of an artificial light and affirmed their convictions. *Id.* at 406.

In *State v. Parks*, 657 S.W.2d 402 (Mo. App. S.D.1983), the intent of the defendant was also inferred from the surrounding circumstances. The defendants complained on appeal that there was insufficient evidence to support the charge of pursuing deer with the aid of an artificial light. They argued that there was "no

evidence in the cause whatsoever that any wildlife was present in the area," and that there was "no evidence that the [defendants] 'saw any wildlife, or shot at any wildlife or otherwise attempted to take wildlife, nor is there any evidence that they were in fact even looking for wildlife.'" *Id.* at 403. In concluding that the evidence was sufficient to.support the conviction, the court noted that the defendants were not charged with shooting at wildlife, and whether they saw any or any was present would not prevent them from pursuing wildlife. *Id.* at 404. The court stated that the manner in which the vehicle was traveling and in which the spotlight was being used, the rifle, and the admission that they were "out looking for some meat" indicated that they were pursuing wildlife. *Id.*

■ In the instant case, Defendant's intent can also be inferred from the surrounding circumstances. The record reveals that Defendant took three dogs from a pen, and the dogs obeyed Defendant's commands and followed him into the woods. Minutes later, a deer came out of the woods with a dog, which Agent Veach recognized as one of the dogs Defendant had earlier released from the pen, following closely behind it. Defendant, clad in hunter orange, was on his ATV and was following shortly behind the dog. He stopped the ATV and pointed a rifle in the direction of the fleeing deer. From this evidence, we can conclude that Defendant was attempting to take a deer with the aid of dogs. Consequently, Defendant's first point must be denied.

In his final point, Defendant argues that the trial court erred in convicting him because the act of attempting to take deer with the aid of dogs as charged in the information does not state a violation of 3 CSR 10–7.410(1)(D) (2000). He contends

that the regulation does not prohibit the attempt to take deer with the aid of dogs.

As aforementioned, 3 CSR 10–7.410(1)(D) (2000) prohibits the use of dogs to "pursue" or "take" deer. 3 CSR 10–11.805(43) (2000) defines "pursue" as including "the act of trying to find, to seek or to diligently search for wildlife for the purpose of taking this wildlife." 3 CSR 10–11.805(47) (2000) defines "take" as "killing, trapping, snaring, netting or capturing in any manner, any wildlife, and also refers to pursuing, molesting, hunting, wounding; or the placing, setting or use of any net, trap, device, contrivance or substance in an attempt to take; and every act of assistance to every other person in taking or attempting to take any wildlife." From these definitions, it is clear that attempting to take a deer with the aid of dogs falls within 3 CSR 10–7.410(1)(D) (2000) and is a prohibited activity. Defendant's point is therefore denied.

The judgment of the trial court is affirmed.

BARNEY, C.J., and RAHMEYER, J., concur.