STATE of Missouri, Respondent,

v.

**Lloyd Dale HAWTHORNE, Appellant.**

No. 24497.

Missouri Court of Appeals,
Southern District,
Division One.

May 14, 2002.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sara L. Trower, Asst. Atty. Gen., Jefferson City, for respondent.

KERRY L. MONTGOMERY, Judge.

Lloyd Dale Hawthorne (Defendant) was convicted following a bench trial of violating § 195.420 [1] by possessing a chemical with the intent to manufacture methamphetamine. He was sentenced to seven years' imprisonment. His sole point on appeal contests the sufficiency of the evidence.

Defendant's sole point on appeal argues that there was insufficient evidence that he possessed "the powder" with the intent to manufacture methamphetamine. Furthermore, he argues that there was no reasonable inference that he intended to manufacture methamphetamine. We disagree.

 In a court-tried case, the sufficiency of the evidence is determined by the same standard as in a jury-tried case. *State v. Downen*, 3 S.W.3d 434, 435 (Mo. App.1999). Our review is based on whether there is sufficient evidence from which the trier of fact could have reasonably found guilt. *Id.* In determining whether there was sufficient evidence to support a finding of guilt, we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Bryan*, 60 S.W.3d 713, 715 (Mo.App.2001).

The parties stipulated to the following facts. After receiving an anonymous tip regarding drug activity, police officers went to Defendant's residence for a "knock and talk." Defendant, the only resident, gave officers permission to search his residence. In the course of their search, they found a brown leather bag with a small plastic baggie inside. The plastic baggie contained a white residue. The record does not indicate whether this residue was identified.

In the kitchen, in the freezer section of Defendant's refrigerator, officers found a plastic baggie containing an off-white powdery substance. Once the freezer was opened, the officer conducting the search smelled a very strong ammonia smell coming from the freezer compartment. The white powdery substance was seized and later analyzed.

A criminalist and chemist with the Missouri State Highway Patrol testified at trial that the contents seized from Defendant's refrigerator weighed 23.72 grams and tested positive for ephedrine or pseudoephedrine, acetaminophen, and dextromethorphan. She further testified that these combinations of ingredients are commonly found in cold and allergy medicines. These medications are sold in capsule or tablet form and not in the powder form found at Defendant's residence.

According to the witness, there are legitimate reasons to put such medicine in powder form. For example, if a person had difficulty swallowing pills. However, if this were the case, the pills would not be placed in powder form in "bulk." In her opinion, the only reason to place this amount of pills in powder form would be to manufacture methamphetamine. Reducing the pills to powder form is a more effective method in manufacturing methamphetamine. She also testified that the smell of ammonia is commonly associated with manufacturing methamphetamine. Ammonia is a necessary ingredient when methamphetamine "cooks" follow the Birch reduction method. This method is typically used in the Greene County area.

1. All statutory references are to RSMo 2000.

Defendant argues that possession of legal items such as cold and allergy medication, even in large amounts, is insufficient to establish intent to manufacture a controlled substance. In support of his contention, he cites several Missouri cases including *State v. Tackett*, 12 S.W.3d 332, 335–36 (Mo.App.2000) (affirming trial court's decision to grant a motion to suppress evidence when defendant was arrested and charged with "creation of a controlled substance" after he and two other men purchased six boxes each of an allergy medication), *State v. Arles*, 998 S.W.2d 136, 138 (Mo.App.1999) (reversing trial court when defendant was arrested after purchasing six boxes of Suphedrine, antihistamine tablets containing ephedrine or pseudoephedrine, Coleman fuel, and acetone), and *State v. Morrow*, 996 S.W.2d 679, 681 (Mo.App.1999), *overruled in part on other grounds by State v. Withrow*, 8 S.W.3d 75, 79 (Mo. banc 1999) (reversing trial court when defendant was arrested after officers observed him purchasing toluene and Liquid Fire, a drain cleaner, and during a search found an air tank and bottles of medicines containing ephedrine).

In all of these cases, the various defendants were arrested after possessing one or more of the ingredients necessary to make methamphetamine. The court of appeals reversed the defendants' convictions in *Arles* and *Morrow* on the grounds that mere possession of one or more of the ingredients necessary to create methamphetamine was not enough to establish intent to create a controlled substance. Likewise, in *Tackett*, the court held that probable cause did not exist to arrest defendant when it was based solely on defendant's possession of allergy tablets. 12 S.W.3d at 340.

Defendant's actions, however, more closely resemble the facts in *State v. Camerer*, 29 S.W.3d 422 (Mo.App.2000). In *Camerer*, defendant was arrested after a backpack containing a pickle jar with a bluish-green substance and liquid was thrown from the passenger side of the automobile in which she was riding. *Id.* at 424. The contents of the pickle jar had a very strong ammonia odor. A criminalist identified the substance as pseudoephedrine and noted that there was no legitimate purpose for mixing pseudoephedrine and anhydrous ammonia. *Id.* The *Camerer* court upheld defendant's conviction of possessing pseudoephedrine with intent to create a controlled substance. *Id.* at 426.

Similarly, Defendant in this case has taken the additional step of removing the cold or allergy tablets from their packaging and crushing them into powder form. The officer conducting the search of Defendant's freezer compartment noted a strong ammonia smell. The criminalist in the case at bar noted that there was no legitimate purpose for crushing the cold and allergy tablets in bulk. There is no legitimate purpose in mixing ammonia and cold or allergy pills. *See Camerer*, 29 S.W.3d at 424.

In light of the strong ammonia odor and the form in which the ephedrine or pseudoephedrine was found, we find that the trial court had sufficient evidence to find Defendant guilty of violating § 195.420.

The trial court's ruling is affirmed.

SHRUM, P.J., and BARNEY, C.J., concur.