STATE of Missouri, Plaintiff–Respondent,

v.

Annalea R. BREMENKAMP, Defendant–Appellant.

No. 26975.

Missouri Court of Appeals, Southern District, Division Two.

April 10, 2006.

Amy M. Bartholow, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, of Jefferson City, Daniel N. McPherson, Assistant Attorney General, of Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Annalea R. Bremenkamp ("Defendant") was convicted, following a bench trial, of possession of methamphetamine with intent to distribute, a violation of Section 195.211,[1] and possession of pseudoephedrine with intent to manufacture methamphetamine, a violation of Section 195.420. She received concurrent sentences of eight years and five years' imprisonment. On appeal, Defendant alleges trial court error in allowing the State to introduce an inculpatory statement made to police during the execution of a search warrant, and she challenges the sufficiency of the evidence supporting her conviction on both counts. We affirm.

Viewed in the light most favorable to the verdict, the evidence reveals that on October 16, 2003, Springfield Police Officers served a search warrant on 3300 West Kearney in Springfield, Missouri ("the residence"). Police had received information from a reliable informant, that a man named "Russell" was selling methamphetamine from the residence. The residence, a two-story house along with several outbuildings, sat on approximately twenty acres of land. The buildings were surrounded by a six-foot tall corrugated metal privacy fence separating them from the road.

Prior to entering the house, officers observed people going in and out of the outbuildings. When the officers entered the residence they found Defendant, her husband ("Russell"), and two other males sitting at the kitchen table. A small black duffle bag sat on the table directly in front of Defendant and Russell. The duffle bag was sitting closer to Russell, but within Defendant's reach. Inside the duffle bag, the officers found several prescription pills, approximately twelve bags of methamphetamine, a plastic container containing burnt marijuana roaches, a piece of paper with instructions and a list of ingredients used in the manufacturing of methamphetamine, a check made out to an indi-

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

vidual who did not reside at the residence, and an electronic scale.

In a downstairs bedroom, the officers found some pseudoephedrine pills on a trunk at the foot of the bed. Two jars of unknown liquid were located underneath the kitchen sink. A search of the outbuildings revealed a fork-lift type propane cylinder that had a black pole duct taped to it. The cylinder had a strong odor of anhydrous ammonia. The officer who discovered the propane cylinder, possibly due to his exposure to the anhydrous ammonia, began having trouble breathing. He became light-headed and had a weakness in his legs. After becoming nauseated and feeling faint, he was taken to the emergency room for treatment. Other tanks were also found on the property.

Defendant and the other people at the residence were arrested. Defendant was given her *Miranda* rights and she invoked her right to counsel. She was held in custody for twenty hours and released.

A second search warrant was executed on the residence on November 12, 2003. During the execution of the search warrant, officers found Russell outside behind one of the outbuildings with $3,550 in his pocket. In a large shed the officers found a clear liquid compound in a glass jar. Inside the residence, Defendant and two others were sitting at the kitchen table. Defendant was seen pulling a syringe out of her arm and throwing it down, while another woman threw her syringe onto the table. There was blood on Defendant's arm and on the syringe. On the table the officers found a razor blade and some empty plastic baggies. A young child sitting on a couch in the adjoining living room was the child of the man and woman sitting at the kitchen table with Defendant.

An officer again read Defendant her *Miranda* rights which she said she understood. This time, however, she agreed to speak to the officers. Defendant indicated that the syringe belonged to her. She was also asked if she was preparing to inject methamphetamine and she replied, "Yes." The officers questioned her about selling methamphetamine and she explained that "things were different now." When asked if that meant that they were no longer selling methamphetamine out of their house, she stated, "I'm not saying we haven't, but it's not like before."

On November 29, 2003, a third search warrant was issued for the residence, after someone had admitted to police they had purchased methamphetamine from Russell at the residence. At the time this search warrant was executed, Defendant, Russell and five other people were at the residence. Officers found hidden in the furnace room a drill bit box containing several plastic baggies of methamphetamine, a prescription bottle belonging to Russell and smaller baggies of marijuana. Officers also found a tin box on top of the piano that contained a razor blade and baggies of methamphetamine residue.

Defendant was again read her *Miranda* rights and she agreed to speak with the officers. Defendant was asked if there were any drugs in the residence, and she responded by saying, "[n]ot that she knew of." She also stated that she was "trying to quit using." Defendant then told officers there had been a small amount of methamphetamine in the house a couple of days prior.

Defendant was charged by felony information of possession of a controlled substance with intent to distribute, possession of pseudoephedrine with intent to manufacture a controlled substance, and endangering the welfare of a child in the first degree.

After the court denied Defendant's motions to suppress evidence and statements,

the case was tried without a jury. At the close of the State's case, Defendant moved for a judgment of acquittal on all three counts. The trial court granted the motion as to the count for endangering the welfare of a child in the first degree, but found Defendant guilty on the other counts. At sentencing, the trial court overruled Defendant's motion to reconsider and sentenced Defendant to concurrent terms of eight years for possession of a controlled substance with intent to distribute and five years for possession of pseudoephedrine with the intent to manufacture a controlled substance. This appeal followed.

Defendant's first point relied on is set forth below:

The trial court erred in overruling [Defendant]'s motion to suppress statements and allowing Officer Spaeth to testify regarding [Defendant]'s statements of November 12, 2003, that could be construed to show her involvement in Russell's earlier sales of methamphetamine from the residence, because the admission of this testimony violated [Defendant]'s rights to counsel and to be free from compelled self-incrimination, as guaranteed by the 5th and 14th Amendments to the United States Constitution and Article I, Sections 10 and 19 of the Missouri Constitution, in that Officer Spaeth was present on October 16, 2003, when [Defendant] invoked her *Miranda* right to counsel, and [Defendant] did not reinitiate contact with the police prior to November 12, 2003, on which date [Defendant] was again in custody and subjected to police interrogation, during which Officer Spaeth initiated contact regarding the circumstances of [Defendant]'s October 16th arrest, and [Defendant] made incriminating statements that were used against her at trial on charges arising out of the October 16th arrest where she had in-

voked her right to counsel. Without [Defendant]'s statements, the State had insufficient evidence upon which to convict [Defendant] of possessing methamphetamine with intent to distribute on October 16.

█ Our review of a trial court's ruling on a motion to suppress is limited to ascertaining whether the court's decision is supported by substantial evidence. *State v. Seibert,* 103 S.W.3d 295, 300 (Mo.App. S.D. 2003). We view the facts and all reasonable inferences from those facts in the light most favorable to the trial court's determination. *Id.* "Whether a defendant's constitutional rights were violated is a question of law reviewed *de novo.*" *State v. Nunnery,* 129 S.W.3d 13, 17 (Mo. App. S.D.2004).

In the present case, during the execution of the October 16, 2003, search warrant, after being read the *Miranda* warnings, Defendant invoked her right to counsel. Police then arrested Defendant and held her in custody for approximately twenty hours. During the execution of the November 12, 2003, search warrant, police again read Defendant the *Miranda* warnings. On this occasion, Defendant stated that she understood her rights, and agreed to speak with police. She then made the inculpatory statements at issue in this appeal.

█ In order to reduce the risk of a coerced confession and to enforce the privilege against self-incrimination "[an] accused must be adequately and effectively apprised of his rights and the exercise of those rights must be honored." *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694, 719 (1966). The admissibility of any custodial confession is conditioned on warning a suspect of his rights. *Missouri v. Seibert,* 542 U.S. 600, 608, 124 S.Ct. 2601, 2608, 159 L.Ed.2d

643, 653 (2004). "[F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained." *Id.*

■ "[A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 386 (1981). "[W]hen counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489, 498 (1990).

The State concedes Defendant was subject to custodial interrogation without the presence of counsel when she made the incriminating statements at issue in this appeal. It is clear that under *Edwards*, Defendant's invocation of her Fifth Amendment right to counsel would prohibit the police from further interrogating her regarding that charge or any other offense in the absence of counsel while she remained in custody. *Minnick*, 498 U.S. at 150, 111 S.Ct. 486. In the present case, Defendant had been released from custody

for approximately a month before waiving her *Miranda* rights and giving the inculpatory statements. Defendant, interpreting *Edwards* and its progeny, argues that a break in custody does not permit the State to initiate an interrogation in the absence of counsel.

The western district of this Court was faced with this issue in *State v. Farris*, 125 S.W.3d 365, 371 (Mo.App. W.D.2004). That court followed the position of a number of federal and state courts in holding that "a break of custody removes the concerns that underlie the prophylactic principles of *Miranda* and *Edwards*." [2] *Id.* The western district reasoned that "[w]hen the accused 'is released from police custody, he is no longer subject of the inherently compelling pressures of custodial interrogation and his Fifth Amendment rights which the *Miranda–Edwards* prophylactic rule was designed to protect are no longer in jeopardy.'" *Id.* at 371–72 (quoting *Commonwealth v. Wyatt*, 455 Pa.Super. 404, 688 A.2d 710, 712–13 (1997)).

■ We find the reasoning of the western district sound and hold that when Defendant was released from custody after her October 16, 2003, arrest, the resulting "break in custody" dissolved her protections against further police interrogation under the *Miranda–Edwards* rule. We also note that the Supreme Court has indicated in dictum, that a "break in custody"

---

**2.** See, e.g., *United States v. Harris*, 221 F.3d 1048, 1052–53 (8th Cir.2000); *Kyger v. Carlton*, 146 F.3d 374, 380–81 (6th Cir.1998); *United States v. Bautista*, 145 F.3d 1140, 1150 (10th Cir.1998); *United States v. Barlow*, 41 F.3d 935, 945–46 (5th Cir.1994); *United States v. Hines*, 963 F.2d 255, 257 (9th Cir. 1992); *Dunkins v. Thigpen*, 854 F.2d 394, 397–98 (11th Cir.1988); *McFadden v. Garraghty*, 820 F.2d 654, 661 (4th Cir.1987); *United States ex rel. Espinoza v. Fairman*, 813 F.2d 117, 125 (7th Cir.1987); *People v. Storm*, 28 Cal.4th 1007, 124 Cal.Rptr.2d 110, 52 P.3d

52, 61–62 (Ca.2002); *People v. Trujillo*, 773 P.2d 1086, 1092 (Colo.1989); *Wilson v. State*, 264 Ga. 287, 444 S.E.2d 306, 309 (Ga.1994); *Commonwealth v. Galford*, 413 Mass. 364, 597 N.E.2d 410, 413–14 (Mass.1992); *Willie v. State*, 585 So.2d 660, 666–67 (Miss.1991); *State v. Warren*, 348 N.C. 80, 499 S.E.2d 431, 440–41 (N.C.1998); *Commonwealth v. Wyatt*, 455 Pa.Super. 404, 688 A.2d 710, 712–13 (Pa.Super.Ct.1997); *Commonwealth v. Gregory*, 263 Va. 134, 557 S.E.2d 715, 723–24 (Va. 2002); *State v. McKenzie*, 197 W.Va. 429, 475 S.E.2d 521, 530 (W.Va.1996).

removes the protection offered by *Edwards*. *See McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158, 168–69 (1991) ("If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial ..."). In keeping with this principle, when Defendant was again in custody on November 12, 2003, she was required to reassert her rights to remain silent and to counsel. Defendant instead decided to waive those rights and speak with the police. The trial court did not err in denying Defendant's motion to suppress the statements she made to police during the November 12, 2003, interrogation. Defendant's first point is denied.

■■■ In her second point, Defendant argues the evidence was insufficient to establish beyond a reasonable doubt that she possessed methamphetamine or intended to distribute it. Our review of the sufficiency of the evidence in a court-tried criminal case is governed by the same standard used in a jury-tried case. *State v. Agee*, 37 S.W.3d 834, 836 (Mo.App. S.D. 2001). Our inquiry is limited to determining whether there is sufficient evidence from which a reasonable finder of fact could find the defendant guilty beyond a reasonable doubt. *State v. Patton*, 157 S.W.3d 278, 280 (Mo.App. S.D.2005). "Substantial evidence is that from which the trier of fact could reasonably find the issue in conformity with the verdict." *State v. Pasteur*, 9 S.W.3d 689, 697 (Mo. App. S.D.1999). When assessing whether there is sufficient evidence supporting a finding of guilt, we do not weigh the evidence but accept as true all evidence and reasonable inferences tending to prove guilt while ignoring all contrary evidence and inferences. *State v. Waddell*, 164 S.W.3d 550, 551 (Mo.App. S.D.2005).

■■■ To sustain a conviction of possession of a controlled substance with intent to distribute under Section 195.211, the State must have proven (1) conscious and intentional possession of the controlled substance, either actual or constructive; (2) awareness of the presence and nature of the substance; and (3) intent to distribute it. *State v. Gonzalez*, 108 S.W.3d 209, 211 (Mo.App. S.D.2003). Where there is no actual possession, as the State acknowledges here, the State must not only prove constructive possession, but must also show other facts that buttress the inference of possession. *State v. Purlee*, 839 S.W.2d 584, 587–88 (Mo. banc 1992).

■■■ "Constructive possession requires, at a minimum, evidence that Defendant had access to and control over the premises where the drugs were found." *State v. Morris*, 41 S.W.3d 494, 497 (Mo. App. E.D.2000). "Exclusive possession of the premises raises an inference of possession and control." *Id.* In the present case, Defendant was not in exclusive possession of the premises and did not have actual physical possession of the methamphetamine on which her conviction is based. Where the premises are jointly possessed, there must be further evidence connecting a defendant to the controlled substance. *Id.* Further evidence that will support a conviction where there is joint possession of the premises include: (1) routine access to the area where the controlled substances are kept; (2) the presence of large quantities of the controlled substance at the scene of the arrest; (3) admission of the accused; (4) being in close proximity to drugs or drug paraphernalia in plain view of law enforcement; (5) the commingling of the controlled substance with a defendant's personal belongings; (6) or flight by a defendant upon realizing the

presence of law enforcement. *Id.* When determining whether sufficient further evidence connects a defendant to the controlled substance, we consider the totality of the circumstances. *Purlee,* 839 S.W.2d at 589.

Here, the record supports Defendant's conviction for possession of methamphetamine with intent to distribute. Defendant had routine access to the areas where methamphetamine was being manufactured and kept. Defendant argues the State produced no direct evidence that she lived at the residence where the methamphetamine was found. However, the record shows Defendant and her husband were the only ones present during the execution of all three search warrants. Prescription pill bottles with Defendant's name were found at the residence. Women's clothing consistent with Defendant's size, and a women's purse were found in a downstairs bedroom, the only bedroom in the residence that appeared to be inhabited. There was ample evidence from which the trial court could have drawn a reasonable inference that she did live there. "An inference is a conclusion that is drawn from established facts, and must be both logical and reasonable." *State v. Mickle,* 164 S.W.3d 33, 50 (Mo.App. W.D.2005). It would be both logical and reasonable to conclude that Defendant lived at the residence where methamphetamine was being manufactured and sold, thus giving her routine access to the areas where the methamphetamine was being kept.

There were large quantities of methamphetamine present at the scene where Defendant was arrested. The bag containing methamphetamine found during the October 16, 2003, search warrant contained eleven grams of methamphetamine and several empty baggies containing methamphetamine residue. Defendant was in close proximity to drugs and drug paraphernalia within plain view of the police. The bag containing eleven grams of methamphetamine was sitting on a table within Defendant's reach.

Furthermore, Defendant's own inculpatory statement, having been found admissible, may be considered. During the execution of the November 12, 2003, search warrant, Defendant admitted to police that she was trying to inject herself with methamphetamine, using a syringe. She then explained that "things were different now." When asked if that indicated they were no longer selling methamphetamine out of their house, Defendant responded, "I'm not saying we haven't, but it's not like before." This admission indicates Defendant's involvement in the methamphetamine distribution taking place at the residence.

The evidence shows that in addition to the presence of methamphetamine, there was a methamphetamine production and distribution operation being conducted at the residence. *See Gonzalez,* 108 S.W.3d at 212. This was shown by (1) controlled buys where methamphetamine was purchased from Defendant's husband, (2) jars of liquid containing pseudoephedrine under the kitchen sink, (3) pseudoephedrine pills in the bedroom, (4) a piece of paper listing ingredients used in the manufacturing of methamphetamine, (5) a cylinder containing anhydrous ammonia found in one of the outbuildings, (6) a jar with clear fluid and a one-gallon glass jug containing a multi-layered liquid also found in one of the outbuildings, and (7) the aforementioned eleven grams of methamphetamine wrapped in individual baggies.

Based on the totality of the circumstances, we conclude there was substantial evidence indicating Defendant consciously and intentionally possessed methamphetamine and knew of its presence and illegal nature. Furthermore there is substantial

evidence indicating that Defendant intended to distribute the methamphetamine. Defendant's second point is denied.

In her third point, Defendant argues the evidence was insufficient to establish beyond a reasonable doubt that she possessed pseudoephedrine with the intent to manufacture methamphetamine. Defendant was charged with violating Section 195.420. Subsection one of that statute reads in relevant part that "[i]t is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400 ... with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter that chemical to create a controlled substance." Pseudoephedrine is a chemical listed in subsection 2 of Section 195.400. To sustain Defendant's conviction under Section 195.420 the State must have proven: (1) that Defendant possessed pseudoephedrine; and (2) that she did so with the intent to manufacture a controlled substance, in this case methamphetamine. *See Agee*, 37 S.W.3d at 836.

Consistent with the principles already discussed, the State must prove that Defendant had actual or constructive possession of the pseudoephedrine. *Id.* As was the case with the methamphetamine found at the residence, Defendant was not in exclusive possession of the premises and did not have actual physical possession of the pseudoephedrine. Here, the evidence shows that pseudoephedrine pills were found on a trunk at the foot of a bed in the downstairs bedroom. The downstairs bedroom was the only bedroom at the residence that appeared to be inhabited. Two jars of an unknown liquid were found under the kitchen sink. Samples of the liquid were submitted for testing, and were determined to contain pseudoephedrine.

As discussed earlier, there was sufficient evidence from which the trial court could draw the reasonable inference that Defendant lived at the residence. There is also sufficient evidence from which the trial court could infer that Defendant occupied the downstairs bedroom where the pseudoephedrine pills were found. As an occupant of the residence, Defendant had routine access to both the downstairs bedroom and underneath the kitchen sink. Based on the totality of the circumstances, we conclude there was substantial evidence indicating Defendant consciously and intentionally possessed pseudoephedrine.

Defendant's possession of the pseudoephedrine, alone, is not enough to demonstrate an intent to manufacture methamphetamine. *Agee*, 37 S.W.3d at 837. However, as we have already discussed, the record clearly shows that methamphetamine manufacture and distribution was taking place at the residence. Furthermore, Defendant's statement to police indicates her active involvement in that operation and is evidence of her intent to manufacture methamphetamine.

We conclude there was substantial evidence indicating Defendant possessed pseudoephedrine with the intent to manufacture methamphetamine. Defendant's third point is denied.

The judgment of the trial court is affirmed.

BATES, C.J., and SHRUM, P.J.,—concur.