**STATE of Missouri, Respondent,**

v.

**Kathleen N. LUBBERS, Appellant.**

**No. ED 79766.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 30, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Amy M. Bartholow, Columbia, MO, for appellant.

John Munson Morris III, Anne E. Edgington, Jefferson City, MO, for respondent.

MARY R. RUSSELL, Judge.

Kathleen N. Lubbers ("Defendant") appeals from a conviction following a jury verdict finding her guilty of possession of chemicals with intent to create a controlled substance and of possession of a controlled substance, in violation of sections 195.420 and 195.202 RSMo 2000,[1] respectively. Defendant was sentenced to two one-year prison terms to be served concurrently. The trial court denied defendant's Motion for Acquittal or in the Alternative for a

---

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

New Trial. Because of Defendant's failure to file her motion in a timely manner, we are limited to plain error review. We find the state presented sufficient evidence to prove Defendant possessed methamphetamine, but it failed to proffer any evidence from which a reasonable person could conclude she possessed ether and lithium batteries with an intent to manufacture methamphetamine. As a result, we affirm in part and reverse in part the trial court's denial of her motion for acquittal or for a new trial.

Defendant was with her boyfriend, Chris Colter ("Boyfriend") at a friend's house on March 6, 1999, when Defendant borrowed Boyfriend's truck to run an errand. As she was driving the truck, a Farmington police officer pulled her over. The officer stopped Defendant to inquire as to whether she had any information pertaining to an unrelated matter he was investigating. When the officer turned his lights on to signal for her to pull over, Defendant continued for several blocks, leaning toward the passenger side of the truck in the meantime, before stopping in a grocery store parking lot.

When the officer approached the vehicle, Defendant was lighting a cigarette. When she rolled down the truck window, the officer smelled ether, a highly flammable and explosive chemical, and he immediately asked her to extinguish the cigarette. Knowing that ether was commonly used in manufacturing methamphetamine, a controlled substance, the officer called for assistance because of his limited knowledge of methamphetamine manufacturing. Defendant produced her driver's license for the officer. When she could not find any proof of insurance for the vehicle, she explained to the officer that it was Boyfriend's truck.

After another officer arrived, they asked Defendant for permission to search the truck, and she consented in writing. A purse was lying on the seat of the truck. Underneath some clothing and a tarpaulin in the cab, they found a box with several items inside, including plastic wrap, coffee filters, plastic tubing, and several jars, some of which contained a liquid. Some of the jars had residue in them, which caused one of the officers to believe the contents were in the later stages of methamphetamine processing. The officers contacted two detectives from the Farmington Police Department and arrested Defendant.

When the two detectives saw what was in the truck, they called a tow truck to transport it to the local police department. Inside the passenger compartment of the truck, the detectives found a few garden pump handles and sprayers. Between the truck's bucket seats, the detectives found a red duffel bag that contained several items, including jars filled with "a two-layer liquid," a cloth bag with lithium batteries inside it, and a red rag.

As the detectives further examined the contents of the truck cab, they concurred with the other officers' suspicions that it contained items used in methamphetamine manufacturing. The detectives then called a state trooper and a local drug task force officer because they were not trained to dismantle or to take samples from such a lab.

The detectives found a plastic tote box in the truck's floorboard. Inside, they found a college chemistry book, coffee filters, several cans of starter fluid, rubber gloves, various funnels, rock salt, jars, table salt, and several sheets of paper. One page contained a list of "common chemicals and items used in the production of methamphetamine," and others showed names of several chemicals used in methamphetamine manufacturing. At trial, one of the detectives testified that ethyl ether can be extracted from the starter fluid and

that salt can be used in a generator made from garden sprayers to produce a gas necessary for the final stage of methamphetamine processing.

The state trooper drew 14 samples from the various jars found in the truck and sent them to the Southeast Missouri Regional Crime Laboratory for evaluation, where they were received three days later. Some of the samples tested positive for methamphetamine, and some contained ephedrine, the main ingredient for methamphetamine manufacturing.

After the samples were drawn, one of the detectives questioned Defendant. She told him that the truck and its contents belonged to Boyfriend. Another detective searched through the purse found in the truck. Inside, he found a woman's compact, which had a white residue on the mirror, and a pill bottle containing 56 ephedrine hydrochloride tablets. The mirror residue tested positive for methamphetamine. The purse also contained a note with a dollar amount and some names written on it. The note read: "Have Dale ask Mike about my hundred dollars. He don't get anymore until he pays. No fronts. Dale or Mike will go talk to Roy. Have Roy give me my ring. Knock price off bill. Dale will give you 75 plus 7 plus my cookies."

Defendant's trial was held on May 5, 2001, and the jury returned its verdict and was dismissed that day. The jury found Defendant guilty of possession of chemicals with the intent to create a controlled substance and possession of a controlled substance but found her not guilty of the third count, attempt to manufacture a controlled substance. Defendant filed her motion for acquittal or for a new trial on May 22, 2001. The trial court overruled the motion one month later.

We must first address the timeliness of Defendant's motion for acquittal or for a new trial. *See State v. Kohser,* 46 S.W.3d 108, 111 (Mo.App.2001). Rule 29.11, which governs the timeframe for motions for a new trial, provides in pertinent part:

(b) A motion for a new trial or a motion authorized by Rule 27.07(c) shall be filed within fifteen days after the return of the verdict. On application of the defendant made within fifteen days after the return of the verdict and for good cause shown the court may extend the time for filing of such motions for one additional period not to exceed ten days.

. . . .

(d) In jury-tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial except that ... questions authorized by Rule 27.07 to be presented by motion for judgment of acquittal need not be included in a motion for new trial.

In addition, subsection (c) of Rule 27.07 establishes the procedure for motions after discharge of the jury:

If the jury returns a verdict of guilty ..., a motion for judgment of acquittal may be made or renewed within 15 days after the return of the verdict or the jury is discharged. On application of the defendant made within fifteen days after the return of the verdict or the discharge of the jury and for good cause shown the court may extend the time for filing or renewing the motion for judgment of acquittal for an additional period not to exceed 10 days. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. . . .

■ "If [D]efendant applied for and the trial court granted [D]efendant an extension of time to file [her] motion for new trial it was incumbent upon [her] to see

that any record entry doing so was included in the transcript on appeal." *State v. Larrabee*, 572 S.W.2d 250, 251 (Mo.App. 1978). The legal file does not reflect any request for extension nor good cause shown for an extension. The docket sheets do not indicate any such motion or request, and the remainder of the legal file does not include a copy of any written request made by Defendant for additional time.

■ Although the state did not question whether Defendant preserved her claims of error for review, noncompliance must be raised *sua sponte* by the appellate court because neither the court nor the parties can waive its requirements. *Kohser*, 46 S.W.3d at 111; *Larrabee*, 572 S.W.2d at 251–52. The time limits in Rule 29.11 are mandatory. *Kohser*, 46 S.W.3d at 111. Defendant's failure to adhere to the time limits of Rule 29.11(b) and Rule 27.07(c) results in her motion for acquittal or for a new trial preserving nothing for our review. We therefore can consider her allegations only as to issues deemed plain error. *Kohser*, 46 S.W.3d at 111; *State v. Yates*, 982 S.W.2d 767, 769 (Mo. App.1998).

■■ An appellate court may exercise its discretion to consider "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been preserved for appellate review. *State v. Clemons*, 946 S.W.2d 206, 224 (Mo. banc 1997). However, "[i]f the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted." *State v. Crenshaw*, 59 S.W.3d 45, 49 (Mo.App.2001) (*quoting*

*State v. Withrow*, 8 S.W.3d 75, 77 (Mo. banc 1999)).

Defendant asserts two points on appeal wherein she argues the trial court erred in overruling her motion for acquittal or for a new trial and in sentencing her. In her first point, she asserts that the state did not present sufficient evidence to permit a rational trier of fact to convict her for possession of methamphetamine, a controlled substance.

■ To convict a defendant for possession of methamphetamine, the state must prove that the defendant had conscious and intentional possession of the controlled substance, either actual or constructive, and that the defendant was aware of the presence and nature of the substance. *State v. Smith*, 33 S.W.3d 648, 653 (Mo. App.2000). The state may prove these elements by circumstantial evidence. *Id.*

■■ Where the evidence does not establish actual possession, the state may prove that element by constructive possession when the Defendant's knowledge of the controlled substance is buttressed by other facts. *Id.* As in this case, when there is joint control of the premises, the state must present additional evidence demonstrating the defendant's knowledge of the presence of the drugs and control over them. *Id.*

Methamphetamine residue was found on a compact mirror inside a purse found on the seat of the truck Defendant was driving. The purse did not contain Defendant's identification. The police did not ask whether it was hers. However, it was found in the cab of Boyfriend's truck that she was driving alone. Even though Defendant told the officers it was Boyfriend's truck, we find it was reasonable for the jury to infer that the purse and its contents belonged to her.

In addition, some of the samples taken from the truck's contents also tested positive for methamphetamine, and the truck contained what officers described as a methamphetamine lab with products in the final stages of production. Boyfriend testified that when they were at her friend's house, Defendant asked to borrow his truck. Before he let her take it, he told her that it contained a methamphetamine lab and that she would face dire consequences if caught with it. He said she knew what was in the truck before they left his house that evening, but he wanted to reaffirm her awareness before letting her leave in the truck by herself. Boyfriend also testified that Defendant had previously used some of the methamphetamine he produced.

 To prove constructive possession, the state must present additional independent evidence of an incriminating circumstance to buttress an inference of a defendant's knowledge and control. *State v. Powell*, 973 S.W.2d 556, 558–59 (Mo. App.1998); *State v. Brown*, 683 S.W.2d 301, 303 (Mo.App.1984). In this case, an item in a purse that likely belonged to Defendant tested positive for methamphetamine. In addition, Boyfriend testified that prior to her borrowing his truck that evening, he and Defendant were "getting high off" of methamphetamine. He also said he told her the truck contained a methamphetamine lab before she decided to borrow it.

These circumstances sufficiently incriminate Defendant and indicate her awareness of the nature and presence of methamphetamine in the truck. We find the state produced sufficient evidence from which a reasonable juror could have concluded that Defendant knew the truck contained a controlled substance and that she had constructive possession sufficient to constitute control over the items in the passenger compartment of the truck. Defendant's first point is denied.

In her second point, she claims the state did not proffer sufficient evidence to prove that she possessed ether and lithium batteries with the intent to create a controlled substance. In order to prove Defendant's violation of section 195.420, the state was required to offer enough evidence that a reasonable fact finder could find beyond a reasonable doubt that Defendant possessed the ether and lithium batteries and that she did so with the intent to manufacture methamphetamine. *See State v. Agee*, 37 S.W.3d 834, 836 (Mo.App.2001). Our analysis of Defendant's first point on appeal indicates that the state sufficiently produced enough evidence for the jury to conclude that Defendant maintained constructive possession of the contents in the cab of the truck. We next question whether the state presented evidence of Defendant's intent with respect to those items.

Boyfriend testified that Defendant knew there was a methamphetamine lab in the truck and that the lab only lacked anhydrous ammonia to be capable of producing methamphetamine, although one of the detectives testified that the lab was complete. The state, however, failed to present evidence that the Defendant had purchased or handled any of the items constituting the lab found in the truck. Nor did it present any evidence as to whether Defendant knew how to manufacture methamphetamine or that she had ever participated in the manufacture of methamphetamine.

In *State v. Morrow*, 996 S.W.2d 679 (Mo.App.1999), the Western District reversed the defendant's convictions for possession of ephedrine with the intent to manufacture methamphetamine and for attempt to manufacture methamphetamine on grounds of insufficient evidence. The court acknowledged that the evidence

proved the defendant possessed the chemicals used to manufacture methamphetamine and that he used methamphetamine two nights before his arrest. *Id.* at 683. However, it noted "such evidence alone was insufficient to prove that [the defendant] intended to manufacture methamphetamine.... The State did not present any evidence that [the defendant] planned to use the supplies he possessed to manufacture methamphetamine or that he knew how to manufacture the substance." *Id.*

Similarly, the Southern District reversed a jury conviction for possession of pseudoephedrine with the intent to manufacture methamphetamine in *State v. Arles,* 998 S.W.2d 136 (Mo.App.1999). In *Arles,* the defendant and the woman he was with purchased several boxes of suphedrine, coffee filters, air-line tubing, propane, lantern fuel, and alcohol from a discount department store. *Id.* at 137–38 n.3. Workers at the store notified police that many items purchased by the pair were associated with methamphetamine manufacturing. *Id.* at 137–38. An officer followed them from the parking lot and stopped the defendant for another reason. *Id.* at 137. The defendant was found guilty of possession of pseudoephedrine with intent to manufacture methamphetamine. *Id.* The court reversed his conviction, noting that even if all or some of the items in the defendant's possession could be used to manufacture methamphetamine, "unless the evidence was sufficient to permit a reasonable juror to find defendant intended to manufacture methamphetamine, he could not be found guilty of the offense with which he was charged." *Id.* at 139.

In *State v. Agee,* 37 S.W.3d 834 (Mo. App.2001), the Southern District reversed a bench trial finding the defendant guilty of possessing pseudoephedrine with intent to manufacture a controlled substance, finding the state failed to prove the defendant's intent. *Id.* at 839. Officers had observed someone throw a purse, later found to contain pseudoephedrine, from the passenger side of a car the defendant was driving. *Id.* at 837. The trunk contained a propane tank belonging to the defendant's father, which officers suspected she had taken without permission in order to procure anhydrous ammonia. *Id.* at 838. In reversing the defendant's conviction in *Agee,* the court found that although the defendant's acts of surreptitiously discarding tablets and possessing some of the materials necessary for methamphetamine manufacture were suspicious, the trial judge's conclusion that she intended to manufacture methamphetamine based solely on that evidence could not have been reached without speculation. *Id.* at 839.

■ Unlike *Morrow, Arles,* and *Agee,* where the defendants did not possess any manufacturing equipment or other ingredients necessary for the manufacture of methamphetamine, Defendant possessed either a complete or near-complete lab. However, Boyfriend testified that the contents of the lab in their entirety belonged to him and that Defendant had never helped him manufacture methamphetamine. He also said that the items in question were not in the cab of the truck until after he and Defendant arrived at her friend's house when he moved the items inside to keep them from the weather.

Even disregarding what Boyfriend said to disclaim Defendant's knowledge of the methamphetamine manufacturing process, nothing in his testimony on the state's behalf indicated that Defendant knew how to or intended to manufacture methamphetamine. The state failed to present any evidence that Defendant intended to manufacture methamphetamine.

■ Due process requires the state to prove every element of a crime beyond a reasonable doubt. *Crenshaw,* 59 S.W.3d

at 49. Possession alone of ingredients used to manufacture a controlled substance is insufficient to support a conviction for intent to manufacture that substance. *See Agee*, 37 S.W.3d at 838 (*citing State v. Tackett*, 12 S.W.3d 332, 334 (Mo. App.2000)). Although the state presented sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Defendant possessed the chemicals, there was insufficient evidence for it to find that she possessed the requisite intention to manufacture methamphetamine. Point two is granted.

We affirm Defendant's conviction for possession of a controlled substance. We reverse the trial court's denial of her motion for acquittal with respect to the possession of chemicals with intent to create a controlled substance.

GEORGE W. DRAPER III, P.J., and MARY K. HOFF, J., concur.