**STATE of Missouri, Respondent,**

v.

**Steven E. ROLLETT, Jr., Appellant.**

**No. WD 60048.**

Missouri Court of Appeals,
Western District.

Aug. 6, 2002.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sara L. Trower, Asst. Atty. Gen., Jefferson City, for Respondent.

Before PAUL M. SPINDEN, C.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

ROBERT G. ULRICH, Judge.

Steven Rollett, Jr., appeals his convictions following a jury trial for the class C felony of possession of a chemical with the intent to create a controlled substance, section 195.420,[1] and the class B felony of attempting to manufacture methamphetamine, sections 195.211 and 564.011, and sentences as a prior offender to concurrent terms of five years and eight years, respectively. Mr. Rollett challenges the sufficiency of the evidence to support his convictions. The judgment of convictions is affirmed.

## Facts

Prior to January of 2000, a member of the local Drug Strike Force had spoken to the employees at the Wal–Mart in Savannah, Missouri, about methamphetamine and the ingredients used in its manufacture. Wal–Mart employees were informed that ephedrine and pseudoephedrine, commonly found in cold tablets, were ingredients used to manufacture methamphetamine. Savannah Wal–Mart policy limited a customer's purchase of cold medicine containing either of the two substances to three boxes per visit.

On January 19, 2000, Lois Mitts was working as the manager of the over-the-counter drug department at Wal–Mart when a pharmacy technician called her attention to two men that were in the

---

1. All statutory references are to RSMo Cum. Supp.1998 unless otherwise indicated.

store, "getting more cold medicine." When Ms. Mitts recognized the men as having purchased from the store cold medicine four or five times during the previous month, she notified Marilyn Decker, the assistant manager of the store. Steven Rollett Jr. and Sean Fisk were later identified as the men in the Savannah Wal–Mart that day.

By the time Mr. Rollett and Mr. Fisk had concluded their shopping, Ms. Mitts and Ms. Decker had positioned themselves at the front of the store near the checkout lanes. From that location, Ms. Mitts observed the men proceed through separate checkout lanes to pay for their purchases. Ms. Mitts was unable to observe what Mr. Rollett purchased, but she did observe Mr. Fisk purchase three boxes of cold medicine that contained pseudoephedrine.

As Mr. Rollett and Mr. Fisk were exiting the store, Ms. Decker instructed an employee to follow the men and to observe the license plate number of their vehicle. Meanwhile, Ms. Mitts contacted a member of the local Drug Strike Force and informed him that two men had purchased six boxes of cold medicine. When the employee returned with the license plate number and a description of the vehicle Mr. Rollett and Mr. Fisk had entered, Ms. Mitts called the Drug Strike Force a second time and relayed the additional information.

Bruce Lundy, chief deputy of the Andrew County Sheriff's Department, responded to Ms. Decker's phone call. Upon entering the Wal–Mart parking lot, Deputy Lundy observed a vehicle that matched Ms. Decker's description leaving the parking area. As Deputy Lundy passed the vehicle, the two men inside the vehicle made eye contact with him. The men then drove into the drive-thru for the Break Time/Taco Bell store that was across the street from the Savannah Wal–Mart. At

that point, Deputy Lundy drove into a nearby parking lot where he could observe the men. Officer Blake Brownlee of the Savannah Police Department arrived at the scene shortly thereafter and stopped his vehicle at a point where he too could observe the men.

After proceeding through the drive-thru of the Break Time/ Taco Bell store, the men drove into the employee parking lot. Deputy Lundy was suspicious of the men's actions because he had never seen customers use the employee lot. While the men were parked in the employee lot, Deputy Lundy verified the license plate number on the Oldsmobile and was informed that the plate was issued to Mazda owner Sean Fisk.

After approximately ten minutes, the men exited the employee lot, parked in the customer lot, and entered the Break Time/ Taco Bell store. After a few minutes in the store, the men returned to their vehicle and drove south toward the city limits. Deputy Lundy and Officer Brownlee followed the vehicle five or six blocks before stopping it for having improper license plates. Officer Brownlee approached the passenger's side while Deputy Lundy went to the driver's side of the vehicle. When the driver was informed that the stop was based on the vehicle displaying improper plates, he stated that he had just recently purchased the vehicle. A driver's license and insurance card identified the driver as Sean Fisk of St. Joseph, Missouri.

Deputy Lundy asked Mr. Fisk to step out of the vehicle so that he could speak with him separately, away from Mr. Rollett, as Mr. Rollett was sitting in the passenger seat. When asked why he was in Savannah, Mr. Fisk told Deputy Lundy that he had come to Savannah to shop and eat tacos. When asked what he was shopping for, Mr. Fisk stated that he was shopping for cold medicine for his breath-

ing problem and batteries for his camera. When Deputy Lundy asked if there was anything illegal in the vehicle, Mr. Fisk said no.

After speaking with Mr. Fisk, Deputy Lundy spoke with Mr. Rollett. Mr. Rollett told Deputy Lundy that he was in Savannah to purchase cold medicine for his breathing problem and to eat tacos. Deputy Lundy later testified that he was suspicious of both Mr. Fisk's and Mr. Rollett's answers because they both claimed to have breathing problems, but neither one appeared to have difficulty breathing. Neither man was coughing, sneezing, or gasping, and neither had a runny nose or red, watery eyes. In addition, Deputy Lundy knew a Wal–Mart was located in St. Joseph so that Mr. Fisk and Mr. Rollett's coming to the Savannah Wal–Mart seemed odd to him.

After Mr. Fisk gave Deputy Lundy permission to search the vehicle, Deputy Lundy found two Wal–Mart bags on the seat between Mr. Rollett and Mr. Fisk; each bag contained three boxes of Equate antihistamine cold tablets. Six loose blister packs of cold tablets, the equivalent of three additional boxes of Equate cold tablets, were also discovered on the seat between Mr. Rollett and Mr. Fisk. A package of lithium batteries was discovered under the driver's seat. Pseudoephedrine in the cold medicine and lithium in the batteries are ingredients used to manufacture methamphetamine.

In the backseat area of the vehicle, Deputy Lundy found a plastic gasoline container, an old car battery, leather gloves, and two bottles of Heet Gas Line Antifreeze. The car battery contained sulfuric acid, also an ingredient used to manufacture methamphetamine. Heet contains alcohol and is frequently used to extract pseudoephedrine from cold tablets.

In the trunk of the vehicle, Deputy Lundy found more Wal Mart bags that contained additional boxes of Equate antihistamine tablets; three sets of clear hose, like that used with fish tanks; a compressed gas cylinder; and a jug of muriatic acid, about a quarter full. The compressed gas cylinder had been spray painted black. A label that read "Balloon Time" remained visible, however, suggesting that the original use of the cylinder may have been to inflate balloons. Attached to the cylinder was a long piece of copper tubing that contained a shutoff valve. The attachment and valve appeared to be homemade rather than original components of the tank. A bluish green discoloration was present on the copper tubing where it attached to the tank, indicating the presence of anhydrous ammonia in the tank. When the valve on the tank was opened, a strong odor of anhydrous ammonia escaped.

Also discovered in the vehicle were two receipts. One indicated that three boxes of Equate cold medicine were purchased on January 19, 2000. The other reflected that muriatic acid had been purchased on January 17, 2000.

Relying on his training and experience, Deputy Lundy concluded that the items found in Mr. Fisk's vehicle were precursors used to manufacture methamphetamine. Deputy Lundy contacted Buchanan County Drug Strike Force Officer Frank Till and Missouri Highway Patrol Drug and Crime Investigator Sergeant Dave Merrill. After Officer Till and Sgt. Merrill arrived at the scene and viewed the contents of the vehicle, Mr. Fisk and Mr. Rollett were arrested.

Mr. Fisk's vehicle was towed to a garage where it was thoroughly searched and the items found in the vehicle evaluated. In addition to the items previously listed, the subsequent search revealed filter papers

and a digital scale, concealed in a Barbie Doll box and covered in a white sack. These items, too, are used to manufacture methamphetamine.

Mr. Fisk and Mr. Rollett were tried together, each for attempting to manufacture methamphetamine and possession of a chemical with the intent to create a controlled substance. The charges were submitted to the jury on an accomplice liability theory. Mr. Rollett did not present any evidence or testimony in his defense.

Sgt. Merrill, being educated, trained, and experienced in conducting investigations regarding the manufacture of methamphetamine, testified at trial that the items found in Mr. Fisk's vehicle were components to manufacture methamphetamine by the anhydrous ammonia-lithium method. A total of 720 tablets containing pseudoephedrine were seized from Mr. Fisk's vehicle. Sgt. Merrill stated that at least thirty grams of methamphetamine could have been manufactured from the pseudoephedrine in the tablets. Every item necessary to manufacture methamphetamine was present in Mr. Fisk's vehicle.

Steven Rollett, Jr., was charged by information with possessing pseudoephedrine with the intent to create methamphetamine, section 195.420, and attempting to manufacture methamphetamine, sections 195.211 and 564.011. He was found guilty of both crimes.

Mr. Rollett, as a prior offender, was sentenced by the court to concurrent terms of eight years and five years imprisonment for the attempt to manufacture methamphetamine and for possession of pseudoephedrine with the intent to create methamphetamine, respectively.

This appeal followed. Mr. Rollett challenges the sufficiency of the evidence to support his convictions.

## Standard of Review

In considering a challenge to the sufficiency of the evidence, this court accepts as true all evidence and its inferences in the light most favorable to the verdict and rejects all contrary evidence and inferences. *State v. Goddard*, 34 S.W.3d 436, 438 (Mo.App. W.D.2000). "The function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence." *State v. Agee*, 37 S.W.3d 834, 836 (Mo.App. S.D.2001) (quoting *State v. Dawson*, 985 S.W.2d 941, 946 (Mo.App. W.D.1999)). This court is charged with the responsibility of determining whether all of the evidence, direct and circumstantial, is sufficient to provide any rational juror with proof beyond a reasonable doubt of each of the elements of the crime charged. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993).

The State charged Mr. Rollett with possessing pseudoephedrine with the intent to create methamphetamine and with attempting to manufacture methamphetamine and submitted the charges to the jury on an accomplice liability theory. Missouri has eliminated the distinction between principals and accessories. *State v. Bradshaw*, 26 S.W.3d 461, 469 (Mo.App. W.D.2000). "Now, all persons who act in concert to commit a crime are equally guilty." *Id.* Section 562.041.1(2) provides, in pertinent part: "A person is criminally responsible for the conduct of another when [e]ither before or during the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Section 562.041.1(2) RSMo 2001.

To make a submissible case of aiding and abetting, some evidence must be presented that defendant associated

himself with the venture or participated in the crime in some manner. *State v. Chambers*, 998 S.W.2d 85, 91 (Mo.App. W.D.1999). The evidence need not show that the defendant personally committed every element of the crime. *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000). Rather, "any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998). Associating with individuals that committed a crime before, during, or after its occurrence and/or attempting flight from the crime scene are factors which may be considered. *Barnum*, 14 S.W.3d at 591.

### Points on Appeal

■ In his first and second points on appeal, Mr. Rollett contends that insufficient evidence was presented to sustain his convictions for possession of pseudoephedrine with intent to create methamphetamine and attempt to manufacture methamphetamine.

Under section 195.420:

"[I]t is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400 ... with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter the chemical to create a controlled substance...."

Pseudoephedrine is one of the chemicals listed in subsection 2 of 195.400.

In order to convict Mr. Rollett on an accomplice liability theory of possessing a chemical included under section 195.400 (pseudoephedrine) with the intent to create methamphetamine, the State was required to prove: 1) that either Mr. Rollett or Mr. Fisk possessed pseudoephedrine; 2) that either Mr. Rollett or Mr. Fisk was aware of the presence and nature of the pseudoephedrine; 3) that either Mr. Rol-

lett or Mr. Fisk possessed the pseudoephedrine with the intent to convert the pseudoephedrine to create methamphetamine; and 4) that Mr. Rollett acted together with or aided Mr. Fisk in committing the offense of possession of a chemical with intent to manufacture methamphetamine. Section 195.420; MAI–CR3d 304.04; MAI–CR3d 325.34.

Section 195.211.1 states:

"[I]t is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance."

To convict Mr. Rollett of an attempt to manufacture methamphetamine under a theory of accomplice liability, the State was required to prove that 1) Mr. Rollett or Mr. Fisk knowingly attempted to manufacture methamphetamine by collecting the ingredients and equipment necessary to manufacture methamphetamine; 2) such conduct was a substantial step toward the commission of the offense of manufacturing methamphetamine by compounding and processing the necessary chemicals; 3) either Mr. Rollett or Mr. Fisk engaged in such conduct with the purpose of committing the offense of manufacturing methamphetamine; and 4) Mr. Rollett, with the purpose of promoting or furthering the commission of attempting to manufacture methamphetamine, acted together with Mr. Fisk or aided Mr. Fisk in committing that offense. Sections 195.211, 564.011; MAI–CR3d 304.04; MAI–CR3d 325.06.2

■ A substantial step is an act that strongly corroborates the firmness of an actor's intent to complete the commission of an offense. *State v. Todd*, 70 S.W.3d 509, 526 (Mo.App. W.D.2002). The conduct must be indicative of the defendant's

purpose to complete the offense. *Id.* The act or conduct that will fulfill the substantial step requirement depends on the facts of the particular case. *Id.* A substantial step or overt act towards the commission of the crime must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. *Id.*

Sufficient evidence was presented to satisfy the elements of the charged offenses and for a reasonable juror to find Mr. Rollett guilty beyond a reasonable doubt of possessing pseudoephedrine with the intent to create methamphetamine and attempt to manufacture methamphetamine.

## Both Mr. Rollett and Mr. Fisk Possessed Pseudoephedrine

■ Possession and knowledge may be proved by circumstantial evidence. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). The Supreme Court of Missouri has applied the same standard of actual or constructive possession in manufacturing cases as is used in possession cases. *State v. Smith*, 33 S.W.3d 648, 653 (Mo.App. W.D.2000). Actual possession of a substance is where the person has the substance on his person or within his easy reach and convenient control. *State v. Booth*, 11 S.W.3d 887, 891 (Mo.App. S.D. 2000). Constructive possession is where a person has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons. *Id.* A defendant who has exclusive control of property is deemed to have possession and control of any substance found on the property. *Id.* In cases where there is joint control, a defendant is still deemed to have possession and control where there is additional evidence connecting him with the controlled substance. *Id.*

■ Additional evidence that will support a finding of possession and control in a joint control case includes: (1) the presence of large quantities of the substance at the place where the defendant is arrested, (2) conduct and statements made by the defendant, *State v. Keller*, 870 S.W.2d 255, 260 (Mo.App. W.D.1994); and (3) being in close proximity to the substance in plain view of the police, *State v. Jackson*, 576 S.W.2d 756, 757 (Mo.App. E.D.1979). The totality of the circumstances is considered in determining whether sufficient additional incriminating circumstances have been proved. *Purlee*, 839 S.W.2d at 589.

Both Mr. Rollett and Mr. Fisk possessed pseudoephedrine. Equate antihistamine medicine (pseudoephedrine) was discovered in the front passenger compartment and in the trunk of Mr. Fisk's vehicle. In the front passenger compartment, the equivalent of nine boxes of pseudoephedrine was discovered on the seat between Mr. Rollett and Mr. Fisk, a significant amount of pseudoephedrine in plain view and in close proximity to both men. Both Mr. Rollett and Mr. Fisk knew that the vehicle contained pseudoephedrine as indicated by their statements to Deputy Lundy that they were in Savannah to shop for cold medicine and because, as discussed *infra*, both men purchased cold medicine that day. *See Agee*, 37 S.W.3d at 837. Both Mr. Rollett and Mr. Fisk, therefore, were in possession of the substantial amount of pseudoephedrine found in the front passenger compartment.

In addition to possessing the pseudoephedrine found in the passenger compartment, Mr. Fisk also possessed the pseudoephedrine discovered in the trunk of his vehicle because he had access to and control over the trunk. Mr. Fisk's ownership of the vehicle and grant of consent to Deputy Lundy to search the vehicle, including the trunk area, demonstrates his

access to and control over the trunk. Thus, certainly Mr. Fisk was also in possession of the pseudoephedrine found in the trunk.

### Mr. Fisk Intended to Manufacture Methamphetamine

Having determined that both Mr. Rollett and Mr. Fisk possessed pseudoephedrine, the next issue is whether Mr. Rollett or Mr. Fisk intended to use the pseudoephedrine to manufacture methamphetamine.

"[D]irect evidence of intent is rarely susceptible to direct proof and, therefore, must generally be established by circumstantial evidence...." *Agee*, 37 S.W.3d at 837 (citing *State v. Martin*, 882 S.W.2d 768, 770 (Mo.App. E.D.1994)). Evidence of intent need not be conclusive of guilt, nor must it exclude every hypothesis of innocence. *Id.*

In *State v. Lubbers*, 81 S.W.3d 156 (Mo. App. E.D.2002), the Eastern District reversed a defendant's conviction for possession of chemicals with intent to create a controlled substance. *Lubbers*, at 163. In *Lubbers*, defendant was borrowing her boyfriend's truck to conduct an errand when a police officer stopped her. *Id.* at 156. A consent search of the vehicle revealed a complete or nearly complete methamphetamine lab.[2] Defendant was charged with possession of ether and lithium batteries with the intent to create methamphetamine. *Id.* at 161. At trial, Defendant's boyfriend testified that prior to borrowing his truck that evening, he and defendant used methamphetamine. *Id.* at 161. He also testified that defendant knew a methamphetamine lab was in the truck. *Id.* Before holding that defendant's conviction required a reversal because the state failed to present any evidence that indicated that Defendant knew how to or intended to manufacture methamphetamine, the court noted that unlike the defendants in *State v. Morrow*, 996 S.W.2d 679 (Mo.App. W.D.1999), *State v. Arles*, 998 S.W.2d 136 (Mo.App. S.D.1999), and *State v. Agee*, 37 S.W.3d 834 (Mo.App. S.D.2001), "Defendant possessed either a complete or near-complete [methamphetamine] lab." *Id.* at 162.

In this case, Mr. Fisk, like the defendant in *Lubbers*, possessed either a complete or nearly complete methamphetamine lab. Sgt. Merrill essentially testified that every item necessary to manufacture methamphetamine was discovered in Mr. Fisk's vehicle.[3] Moreover, sufficient evidence was presented for the jury to reasonably infer that the compressed gas cylinder found in Mr. Fisk's vehicle had been used to manufacture methamphetamine.[4] The components and ingredients of the methamphetamine lab were discovered throughout Mr. Fisk's vehicle, including the trunk.

---

2. *Lubbers*, at 161. While Defendant's boyfriend testified that the lab only lacked anhydrous ammonia to be capable of producing methamphetamine, a detective testified that the lab was complete.

3. While Sgt. Merrill suggested that an additional amount of anhydrous ammonia might have been needed to produce methamphetamine, he also testified that the compressed air tank found in Mr. Fisk's vehicle had been used to acquire ammonia before and could easily be used to do so again. In addition, although Sgt. Merrill testified that the lab did not have salt and aluminum foil, he also testified that salt and aluminum foil were not needed to produce methamphetamine but were merely used to process methamphetamine into a crystallized form.

4. The cylinder contained a bluish green discoloration, anhydrous ammonia, and two homemade components (the attachment and valve) all of which, Sgt. Merrill testified, were indicative of the manufacture of methamphetamine.

As previously mentioned, the jury was entitled to presume that Mr. Fisk, the owner and operator of the vehicle, possessed the items discovered in the trunk of his vehicle because Mr. Fisk had access to and control of the trunk. For the same reason, the jury was also entitled to presume that Mr. Fisk was in possession of the items discovered in the backseat area of his vehicle. Thus, Mr. Fisk possessed either a complete or nearly complete methamphetamine lab.

While no evidence was presented in *Lubbers* that the defendant knew how or intended to manufacture methamphetamine, sufficient evidence was presented for the jury to infer that Mr. Fisk knew how and intended to manufacture methamphetamine. Not only was Mr. Fisk observed purchasing three boxes of Equate antihistamine medicine (pseudoephedrine) on January 19, 2000, the maximum amount Wal–Mart policy permitted him to purchase, he was observed making similar purchases on four or five previous occasions in the preceding month. In addition to his purchase of pseudoephedrine, Mr. Fisk's possession of a large amount of pseudoephedrine, a total of 720 tablets, although typically a fact that alone is insufficient to prove intent to manufacture methamphetamine,[5] further evinces his intent to manufacture methamphetamine. Mr. Fisk's purchase and possession of a large amount of pseudoephedrine coupled with his possession of either a complete or nearly complete methamphetamine lab entitled the jury to reasonably infer that Mr. Fisk knew how and was intending to manufacture methamphetamine. Sufficient evidence was presented to show that Mr. Fisk intended to use the pseudoephedrine that he and Mr. Rollett purchased on January 19, 2000, along with the additional pseudoephedrine that was seized from Mr.

Fisk's vehicle, to manufacture methamphetamine.

### Mr. Fisk Attempted to Manufacture Methamphetamine

Sufficient evidence was also presented to show that Mr. Fisk was attempting to manufacture methamphetamine in violation of sections 195.211 and 564.011. Based on the facts and circumstances discussed *supra,* a reasonable juror could have inferred that Mr. Fisk's purchase of pseudoephedrine on January 19, 2000, coupled with his possession of either a complete or nearly complete methamphetamine lab, constituted a substantial step in his attempt to manufacture methamphetamine. Each of the elements of the offense were proved beyond a reasonable doubt.

Having determined that sufficient evidence was presented to show that Mr. Fisk committed the offenses of possession of pseudoephedrine with intent to manufacture methamphetamine and attempt to manufacture methamphetamine, the question is whether Mr. Rollett aided Mr. Fisk in committing the offenses.

### Mr. Rollett Aided Mr. Fisk

Sufficient evidence was presented to show that Mr. Rollett aided Mr. Fisk in committing the offenses of possession of pseudoephedrine with intent to manufacture methamphetamine and attempt to manufacture methamphetamine.

The record revealed that on January 19, 2000, Mr. Rollett traveled with Mr. Fisk from St. Joseph, Missouri, to the Wal Mart in Savannah, Missouri. While at Wal–Mart, Mr. Rollett and Mr. Fisk went through separate checkout lanes to purchase a total of six boxes of Equate anti-

---

5.   *Agee,* 37 S.W.3d at 837.

histamine medicine (pseudoephedrine),[6] each purchasing the maximum amount of pseudoephedrine that Wal–Mart policy permitted them to purchase. In addition to purchasing pseudoephedrine with Mr. Fisk on January 19, 2000, Mr. Rollett was observed purchasing pseudoephedrine with Mr. Fisk on four or five previous occasions in the preceding month. When Mr. Fisk's vehicle was stopped by Deputy Lundy, Mr. Rollett was observed seated in the passenger seat of the vehicle, in close proximity to a significant amount of pseudoephedrine (the equivalent of nine boxes) in plain view and in the seat next to him. Without exhibiting any breathing problems (i.e. coughing, sneezing, or gasping) or symptoms indicative of respiratory difficulties (i.e. a runny nose, red, watery eyes, or congestion), Mr. Rollett, like Mr. Fisk, told Deputy Lundy that he was in Savannah, Missouri, to shop for cold medicine for his breathing problems. Lastly, a number of other ingredients required to manufacture methamphetamine were present on the back seat of the vehicle driven by Mr. Fisk and obvious to Mr. Rollett, further evidence of Mr. Rollett's knowledge that the pseudoephedrine that he purchased was to be used to manufacture methamphetamine.

These circumstances, although not compelling by themselves, provide sufficient evidence by which a reasonable jury could find Mr. Rollett guilty beyond a reasonable doubt of possessing a chemical with the intent to manufacture methamphetamine and attempt to manufacture methamphetamine. Points one and two are denied.

The judgment of convictions is affirmed.

PAUL M. SPINDEN, C.J. and EDWIN H. SMITH, J., concur.

---

6. Although no direct evidence was presented, sufficient circumstantial evidence was presented for the jury to reasonably infer that Mr. Rollett purchased three boxes of Equate antihistamine medicine, (pseudoephedrine) on January 19, 2000. First, although Ms. Mitts did not actually observe Mr. Rollett purchase pseudoephedrine, she did observe him make a purchase. Second, by his own admission to Deputy Lundy, Mr. Rollett was in Savannah, Missouri, to shop for cold medicine. Third, two Wal Mart bags, each containing the maximum amount of cold medicine a customer was permitted to purchase at the Savannah Wal–Mart, were discovered on the seat between Mr. Rollett and Mr. Fisk. Lastly, the record revealed that, in addition to purchasing three boxes of pseudoephedrine, Mr. Fisk also purchased lithium batteries during his January 19, 2000 visit to the Savannah Wal–Mart. Because the Savannah Wal–Mart receipt, dated January 19, 2000, discovered in Mr. Fisk's vehicle did not contain an entry for lithium batteries but only an entry for three boxes of pseudoephedrine, the jury was entitled to infer that the receipt was a record of the items Mr. Rollett had purchased.