STATE of Missouri, Respondent,

v.

Marlon FIELDS, Appellant.

No. WD 64304.

Missouri Court of Appeals,
Western District.

Jan. 10, 2006.

William J. Swift, Columbia, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before RONALD R. HOLLIGER, P.J., ROBERT G. ULRICH and JOSEPH M. ELLIS, JJ.

ROBERT G. ULRICH, Judge.

Marlon Fields appeals his conviction following jury trial for trafficking in the second degree, section 195.223, RSMo Cum. Supp.2004, and sentence of sixteen years imprisonment. He challenges the sufficiency of the evidence to support the conviction and the trial court's failure to grant a mistrial after the introduction of what he claims was evidence of other uncharged crimes. The judgment of conviction is affirmed.

### Facts

Viewed in the light most favorable to the verdict, the facts were as follows. At approximately 2:00 a.m. on May 25, 2003, Marlon Fields picked up his girlfriend, Shayna Vanvacter, at her house. Before they left Ms. Vanvacter's house, Mr. Fields got out of his car and had a conversation about drugs with two women in a green car. As he got out of his car, Ms. Vanvacter saw a bag of crack cocaine on the front bench seat right beside Mr. Fields. Before Mr. Fields got back into his car, one of the women said, "You just missed out on a hundred, a hundred and fifty dollars."

Mr. Fields and Ms. Vanvacter then drove to Roosevelt Noel and Laticia Irvin's home. They exited the car, and Mr. Noel asked Mr. Fields if he had a "stick"—a cigarette to dip in PCP. Shortly thereafter, Mr. Fields other girlfriend, Danyelle Danyluck, arrived at Mr. Noel's house. Ms. Danyluck argued with Mr. Fields and Ms. Vanvacter. During the argument, Ms. Danyluck got in Mr. Fields' car to search for her keys and a garage door opener. Ms.

Danyluck eventually left. Mr. Fields took a call on his cell phone and then told Mr. Noel that he was going to take Ms. Vanvacter home and that he had to make a run, which Ms. Vanvacter understood to mean something involving drugs.

Meanwhile, Ms. Irvin's cousin, Alison Stiles, who was at Ms. Irvin's home and who did not have a good relationship with Mr. Fields, called the police and reported that Mr. Fields had tried to kick in the door and commit burglary. The police responded to the call at approximately 3:00 a.m. Officer Joshua Howery was the first to arrive at the scene, and as he drove up, he saw Mr. Fields standing next to his vehicle. Officer Howery knew that Mr. Fields was the registered owner of the car. Mr. Fields looked at Officer Howery, turned away, put his hands in his pockets, and started to walk away. Officer Howery parked, exited his vehicle, and said, "Stop, police." Mr. Fields began to run, and Officer Howery chased him. After chasing Mr. Fields for approximately twenty-five feet, Officer Howery attempted to tackle him. A struggle ensued, and another officer came to Officer Howery's aid. Both officers wrestled with Mr. Fields for about four or five minutes. They tried to use a "wrist lock" and pepper spray, but both were ineffectual. Eventually, the officers were able to handcuff and subdue Mr. Fields. Mr. Fields was transported from the scene.

The officers then interviewed people at the scene. After taking several statements, Officer Howery and another officer, Officer Kelley, examined the area around Mr. Fields' car. They found Ms. Vanvacter sitting in the passenger seat, and as Officer Kelley shined his flashlight through the window, he saw what he believed to be a bag of crack cocaine on the front seat. The bag was sitting one to two inches from Ms. Vanvacter's left hip. Officer Kelley told Officer Howery what he saw, and Ms. Vanvacter immediately said, "That's not mine." Officer Kelley then retrieved the bag from the seat. Subsequent testing of the substance, which weighed 21.53 grams, revealed that it was cocaine base or crack cocaine with a street value of approximately $2,100.

Mr. Fields was subsequently charged by information with trafficking in the second degree, section 195.223, RSMo Cum.Supp. 2004, and resisting arrest, section 575.150, RSMo Cum.Supp.2004. Mr. Fields was convicted of trafficking in the second degree offense and acquitted of resisting arrest. This appeal followed.

### Sufficiency of the Evidence

In his first point on appeal, Mr. Fields claims that insufficient evidence was presented to support his conviction of trafficking in the second degree. He claims that the State failed to prove beyond a reasonable doubt that he possessed or controlled the crack cocaine that was found in his car one hour after he was arrested and taken to jail.

Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). The evidence and all reasonable inferences drawn from the evidence are viewed in the light most favorable to the jury's verdict, and any contrary evidence and inferences are disregarded. *Id.* Great deference is given to the trier of fact. *Id.*

A person commits the class A felony crime of trafficking in the second degree if he possesses more than six grams

of a mixture or substance containing a cocaine base. § 195.223.3(2), RSMo Cum. Supp.2004. To establish possession of a controlled substance, the State must show (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). Both possession and knowledge may be proved by circumstantial evidence. *Id.*

A person has actual possession of a controlled substance if he has the substance on his person or within his easy reach and convenient control. § 195.010(34), RSMo Cum.Supp.2004; *State v. Chavez,* 128 S.W.3d 569, 574 (Mo.App. W.D.2004)(quoting *State v. Rollett,* 80 S.W.3d 514, 521 (Mo.App. W.D.2002)). A person has constructive possession of a controlled substance if he has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons. § 195.010(34), RSMo Cum.Supp.2004; *Chavez,* 128 S.W.3d at 574 (quoting *Rollett,* 80 S.W.3d at 521).

 A person who has exclusive control of property is deemed to have possession and control of any substance found on the property. *Chavez,* 128 S.W.3d at 574 (quoting *Rollett,* 80 S.W.3d at 521). The exclusive possession of premises rule has been modified, however, where automobiles are involved because of "the reality of the contemporary use of the automobile as a means of social accommodation." *Id.* at 574 n. 3 (quoting *State v. Johnson,* 81 S.W.3d 212, 215 (Mo.App. S.D.2002)). In the case of automobiles, the full effect of the exclusive possession rule is tempered by evidence of equal access by persons, other than the owner, to the vehicle. *Id.* (quoting *Johnson,* 81 S.W.3d at 215). Thus, in cases involving joint control of an automobile, a person is deemed to have possession and control over a controlled substance found in the automobile only where sufficient additional evidence connects him to the controlled substance. *Id.* at 574. Even if one is the owner or renter of a vehicle, constructive possession will not be inferred in circumstances where others have had equal access to the vehicle unless there is evidence of additional incriminating circumstances implicating the person. *Johnson,* 81 S.W.3d at 216. Such additional evidence includes the presence of a large quantity of the substance at the scene where the person is arrested; routine access to an area where the controlled substance is found; nervousness exhibited during the search of the area; the controlled substance in plain view; commingling of the controlled substance with personal belongings; and the conduct and statements made by the person. *Chavez,* 128 S.W.3d at 574.

In this case, the crack cocaine was found in Mr. Fields' car approximately one hour after he was transported from the scene by police. Because Ms. Vanvacter and Ms. Danyluck had been in Mr. Fields' car and, thus, had equal access to the car, Mr. Fields' ownership of the car alone was not enough to create an inference of control over the substance. *See Johnson,* 81 S.W.3d at 216. Instead, additional incriminating circumstances implicating Mr. Fields was required. *See Id.* Additional evidence connecting Mr. Fields to the crack cocaine was presented in this case.

First, a large quantity of the substance was found by police officers in plain view on the front bench seat of Mr. Fields' automobile. It weighed 21.53 grams with a street value of approximately $2,100. An investigator with the Buchanan County Strike Force testified that it was "a dealer or a supplier amount of crack cocaine."

Second, both Ms. Vanvacter and Ms. Danyluck testified that the bag of crack

cocaine found by police was not theirs. Ms. Danyluck further testified that she did not put the substance in Mr. Fields' car when she was searching for her keys.

Next, after Ms. Vanvacter was arrested at the scene and transported to juvenile detention, she told investigators that she had seen Mr. Fields with the crack cocaine earlier at her house when he talked to the two women about drugs. Specifically, she said, "When he got out [of his car], I saw the bag of crack in his seat. It was right beside him." Because Ms. Vanvacter recanted the statement at trial telling the jury that she did not see the crack cocaine before it was found by police, Mr. Fields claims that the Ms. Vanvacter's prior inconsistent statement cannot be used to support the conviction. Citing *State v. Pierce*, 906 S.W.2d 729, 734–35 (Mo.App. W.D.1995), Mr. Fields argues that Ms. Vanvacter's recanted statement was insufficient to prove that the drugs belonged to him because no evidence to corroborate the statement was presented.

Section 491.074, RSMo Cum.Supp.2004, provides that in a criminal trial, a witness' prior inconsistent statement is admissible as substantive evidence and that the party offering the statement may argue the truth of the statement. In *Pierce*, the defendant was convicted of statutory rape based on the prior inconsistent statement of the victim that she and the defendant had engaged in sexual intercourse. 906 S.W.2d at 733. At trial, the victim recanted the statement denying the essential element of the crime, intercourse. *Id.* This court held that although the victim's prior statement was admissible under section 491.074, the conviction could not be based solely upon that inconsistent statement without corroboration. *Id.* at 734–35.

Unlike in *Pierce*, Ms. Vanvacter's prior statement that she saw Mr. Fields with the crack cocaine in the car seat beside him

was not the only evidence presented to prove that Mr. Fields' possessed or controlled the crack cocaine. As discussed, the substance was found in plain view on the front seat of Mr. Fields' car, and both women who had access to the car that night testified that the substance was not theirs. Furthermore, evidence was presented that Mr. Fields was involved in drug activity and distribution. Before driving to Mr. Noel's house, Mr. Fields had a conversation about drugs outside Ms. Vanvacter's house with two women in a green car. One of the women said, "You just missed out on a hundred, a hundred and fifty dollars." At Mr. Noel's house, Mr. Noel asked Mr. Fields if he had a "stick"—a cigarette to dip in PCP—and later told him that he had to make a run. Finally, Mr. Fields' conduct showed a consciousness of guilt connecting him with the crack cocaine. When Mr. Fields' first saw Officer Howery, the first police officer to arrive at the scene, he turned away, put his hands in his pockets, and started to walk away. When Officer Howery said, "Stop, police," Mr. Fields began to run. He then struggled with officers for four or five minutes after they caught him. *See State v. McKelvey*, 129 S.W.3d 456, 459 (Mo.App. S.D.2004)(evidence of flight from police can be used to show consciousness of guilt).

The evidence presented in this case corroborated Ms. Vanvacter's prior inconsistent statement that she saw Mr. Fields with the baggie of crack cocaine approximately one hour before he was arrested. Her statement, therefore, constituted substantive evidence. Furthermore, the evidence, including Ms. Vanvacter's statement, was sufficient for a reasonable juror to find that Mr. Fields possessed and was aware of the presence and nature of the crack cocaine. The evidence was, therefore, sufficient to support the conviction

for trafficking in the second degree. The point is denied.

## Evidence of Other Crimes

■ In his second point on appeal, Mr. Fields claims that the trial court erred in failing to grant a mistrial after the introduction of what he claims was evidence of other uncharged crimes. During the prosecutor's examination of Ms. Vanvacter, the following exchange occurred:

Q: Ms. Vanvacter, what I'm showing you has been marked State's Exhibit Number 1. Have you seen State's Exhibit Number 1 before?

A: Yes.

Q: And when was that?

A: Marlon had it at my house before.

Q: Okay.

State's Exhibit Number 1 had been identified earlier in the trial by Officer Kelley as the baggie of crack cocaine found in Mr. Fields' car. Fearing the Ms. Vanvacter had testified that she had seen Mr. Fields with "crack cocaine before," the prosecutor asked to approach the bench and proposed that she be allowed to ask Ms. Vanvacter to clarify her statement. Defense counsel then asserted the Ms. Vanvacter had offered evidence of another crime. At defense counsel's request, the prosecutor asked Ms. Vanvacter outside the presence of the jury to clarify her testimony:

Q: [Ms. Vanvacter], when you said you've seen State's Exhibit 1 before [Mr. Fields] brought it to your house, was that the same day, or are you talking about other times before?

A: Another time.

Q: Okay. When was that other time? How long ago or how close to May 25th?

A: About two months.

Q: Two months before?

A: Yeah.

In light of this testimony, defense counsel requested that the jury be instructed to disregard Ms. Vanvacter's testimony and also a mistrial. Defense counsel argued, "I don't see any way my client can get a fair trial with the jury having heard that she'd seen him in possession of that very exhibit at her home." The trial court reasoned, "[I]f the foundation is that she'd seen him with that very exhibit, why wouldn't that be admissible anyway?" The court then stated, "[I]f the State doesn't want to pursue it further, I will instruct the jury to disregard that answer and there'll be no further mention of it." The prosecutor agreed, the jury was instructed to disregard, and the trial court denied the defense's request for a mistrial.

■ A mistrial is a "drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." *State v. Goff,* 129 S.W.3d 857, 866 (Mo. banc 2004)(quoting *State v. Johnson,* 901 S.W.2d 60, 62 (Mo. banc 1995)). The decision is left to the discretion of the trial court because the trial court is in the best position to determine whether the incident had a prejudicial effect on the jury. *Id.* An appellate court looks only to whether the trial court, as a matter of law, abused its discretion in refusing to declare a mistrial. *Id.*

■ Generally, evidence of uncharged crimes, wrongs, or acts is not admissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Barton,* 998 S.W.2d 19, 28 (Mo. banc 1999). In this case, Ms. Vanvacter's testimony that she had seen Mr. Fields with State's Exhibit 1, the bag of crack cocaine found in Mr. Fields' car, at her house before was not evidence of other crimes. Ms. Vanvacter specifically testified, even in the voir dire questioning outside the presence of the jury, that she saw

Mr. Fields with the same bag of crack cocaine that was found on the morning of his arrest at her house on a previous occasion. Such evidence was not evidence of another crime but evidence that legitimately tended to prove Mr. Fields' guilt of the charged offense, which alleged that Mr. Fields possessed State's Exhibit 1, the bag of crack discovered by police officers. The trial court, therefore, did not abuse its discretion in refusing to grant a mistrial. Mr. Fields' second point is denied.

The judgment of conviction is affirmed.

HOLLIGER, P.J. and ELLIS, J. concur.